**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RICHARD LAW, | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-00806-G |
| | § | |
| HUNT COUNTY, TEXAS, and SANDY | § | |
| BERGER, | § | |
|    *Defendants.* | § | |

**PLAINTIFF RICHARD LAW'S BRIEF IN SUPPORT OF HIS RESPONSE TO
DEFENDANT HUNT COUNTY'S MOTION FOR SUMMARY JUDGMENT**

**Wade A. Forsman**
***Attorney-in-Charge***
**State Bar No. 07264257**
**P.O. Box 918**
**Sulphur Springs, Texas 75483-0918**
**903.689.4144 East Texas**
**972.499.4004 Dallas/Fort Worth**
**903.689.7001 Facsimile**
**forsmanlaw@verizon.net**

**Attorney for Richard Law, Plaintiff**

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.      This is an Employment Case. Law Brings Three (3) Claims Against the County, All Of Which Stem From Its Decision To Fire Him . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Summary of Law's Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Summary of Law's Evidence, Together With Selected Authorities and Articles . . . . . . . 3

IV.     Law Objects to Any New Evidence or Arguments by the County . . . . . . . . . . . . . . . . . 4

V.      Statement of Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      Law Begins to Experience Health Problems . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      Law Transfers to Berger's Justice of the Peace Court, Where He Goes to Work as a Deputy Clerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      Law Gets Mistreated While at Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        D.      Law Needs Surgery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        E.      Travis First Gives Law Permission to Take Two Days Off, Then She Changes Her Mind . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        F.      The County Fires Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

        G.      Events Post Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.     Evidentiary Burdens on Motions for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . 19

VII.    Law Presents Triable FMLA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        A.      Statutory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        B.      Substantive Rights and Entitlements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                1.      Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                    **Page i**

      2.      Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

              a.      The County engaged in actionable "interference" when it fired Law before he had a chance to exercise his FMLA rights . . . . . . . . . . 23

              b.      The County ignores its own document – namely, its Discharge Notice, a/k/a "Employee Warning Record" – which states that Law was on "lite [sic] duty" <u>when the County fired him</u> . . . . . . . . . . 24

C.      Discrimination/Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      1.      Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      2.      Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

              a.      Timing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

              b.      The County's argument that Law "would have been fired even if had not taken FMLA leave" is misplaced and inappropriate at this *prima facie* stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      3.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D.      The County's Proffered Rebuttal Reasons . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

E.      Substantial Evidence Undermines the County's Supposed Reasons for Firing Law, and a Jury Must Assess Whether Those Reasons are Credible . . . . . . . . . . . . . . 29

      1.      Evidence previously offered at the prima facie stage . . . . . . . . . . . . . . 29

      2.      Additional evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

              a.      The County's "Employee Warning Record" . . . . . . . . . . . . . . . . 30

              b.      Other examples of the County's lack of candor . . . . . . . . . . . . . 31

              c.      Doubts about Law's supposedly poor performance . . . . . . . . . . 32

              d.      The County's shifting explanations . . . . . . . . . . . . . . . . . . . . . . 33

              e.      The County's open hostility towards Law . . . . . . . . . . . . . . . . . 33

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                             **Page ii**

3.    The County's misplaced reliance on the same actor inference . . . . . . . 34

4.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

F.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

VIII.    Law Presents a Triable ADA Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

A.    ADA Amendments Act of 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

1.    The ADAAA broadens the interpretation of the word "disability" . . . . . 36

2.    The ADAAA broadens the interpretation of the phrase "substantially limits" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

a.    Past standards rejected . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

b.    Broad construction mandated . . . . . . . . . . . . . . . . . . . . . . . 39

3.    The ADAAA includes episodic conditions and those in remission . . . . . 40

4.    The ADAAA expands the definition of "major life activities" . . . . . . . 40

B.    Application – the Prima Facie Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

1.    Law has a "disability" as that word is defined in the ADA; thus, he conclusively establishes the first prima facie element . . . . . . . . . . . . . . 41

a.    The cases cited by the County are distinguishable . . . . . . . . . . . 42

b.    Law requests summary judgment on the issue of disability . . . . . 43

2.    Law satisfies the fourth and final prima facie element . . . . . . . . . . . . . 43

C.    Application – The County's Proffered Rebuttal Reasons . . . . . . . . . . . . . . . . 44

D.    Application – Substantial Evidence Undermines the County's Supposed Reasons for Firing Law, and a Jury Must Assess Whether Those Reasons are Credible . . . . 44

IX.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**          **Page iii**

# Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

*Black v. Pan Am Labs., L.L.C.*,
    646 F.3d 254 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Brodsky v. New England School of Law*,
    617 F. Supp. 2d 1 (D. Mass 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

*Burnett v. LFW Inc.*,
    472 F.3d 471 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Burrell v. Dr. Pepper/Seven Up Bottling Group*,
    482 F.3d 408 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Butt v. Greenbelt Home Care Agency*,
    2003 WL 685026 (N.D. Iowa 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Byrnie v. Town of Cromwell Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 327 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Citigroup Inc. v. Federal Ins. Co.*,
    649 F.3d 367(5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cones v. Duke Energy Corp.*,
    367 F. Supp. 2d 1092 (S.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Cook v. Equilon Enters., L.L.C.*,
    2010 U.S. Dist. LEXIS 11387 (S.D. Tex. Oct.  26, 2010) . . . . . . . . . . . . . . . . . . . 38

*Davison v. City of Minneapolis*,
    490 F.3d 648 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Desert Palace v. Costa*,
    539 U.S. 90, 100 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                      **Page iv**

*EEOC v. AutoZone, Inc.*,
   630 F.3d 635 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 42

*Erdman v. Nationwide Ins. Co.*,
   582 F.3d 500 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Evans v. Houston*,
   246 F.3d 344 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Fabela v. Soccoro Ind. School Dist.*,
   329 F.3d 409 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Fournier v. Payco Foods Corp.*,
   611 F. Supp. 2d 120 (D.P.R 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Flowers v. Southern Reg. Physician Servs.*,
   247 F.3d 229 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Franchi v. New Hampton School*,
   656 F. Supp. 2d 252 (D.N.H. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Garza v. Mary Kay, Inc.*,
   2010 U.S. Dist. LEXIS 84586 (N.D. Tex. Aug. 17, 2010) . . . . . . . . . . . . . . . . . . . . . . . 26

*Gee v. Principi*,
   289 F.3d 342 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Harvill v. Westward Communications, L.L.C*,
   433 F.3d 428 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25

*Hirsch v. National Mall & Serv., Inc.*,
   989 F. Supp. 977 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*International Shortstop, Inc. v. Rally's, Inc.*,
   939 F.2d 1257 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jackson v. Host Int'l, Inc.*,
   426 Fed. Appx. 215 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Kingston v. Ford Meter Box Co., Inc.*,
   2009 U.S. Dist. LEXIS 31710 (N.D. Ind. April 10, 2009) . . . . . . . . . . . . . . . . . . . . . . . 37

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                    **Page v**

*Kinsella v. Rumsfeld*,
    320 F.3d 309 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Kobrin v. University of Minn.*,
    34 F.3d 698 (8th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Laxton v Gap, Inc.*,
    333 F.3d 572 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Loudermilk v. Best Pallett Co., LLC*,
    636 F.3d 312 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Martinez v. Neiman Marcus Group, Inc.*,
    2006 U.S. Dist. LEXIS 3025 (N.D. Tex. Jan. 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 547 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23, 24, 34

*Mauder v. Metro Transit Auth. of Harris County*,
    446 F.3d 574 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Maxfield v. Cintas Corp.*,
    487 F.3d 1132 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Meinelt v. P.F. Chang's China Bistro, Inc.*,
    787 F. Supp. 2d 643 (S.D. Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Morgan v. Neiman Marcus Group, Inc.*,
    Civil Action No. 3:05-CV-00790-G,
    2005 U.S. Dist. LEXIS 34541 (N.D. Tex. Dec. 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Morris v. City of New York*,
    153 F. Supp. 2d 494 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Munoz v. Echosphere, L.L.C.*,
    2010 U.S. Dist. LEXIS 71913 (W.D. Tex. July 15, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Nero v. Industrial Molding Corp.*,
    167 F.3d  921 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                     **Page vi**

*Nguyen v. Gambro BCT, Inc.*,
  2007 U.S. App. LEXIS 14956 (10th Cir. June 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Nodelman v. Gruner & Jahr USA Pub.*,
  2000 WL 502858 (S.D. N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

*Norton v. Assisted Living Concepts, Inc.*,
  786 F. Supp. 2d 1173 (E.D. Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37, 43

*Nowlin v. Resolution Trust Corp.*,
  33 F.3d 498, 508 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Palasota v. Haggar Clothing Co.*,
  499 F.3d 474 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Parker v. State of La.*,
  323 Fed. Appx. 321, 2009 U.S. App. LEXIS 8632 (5th Cir. April 23, 2009) . . . . . . . . . . . 20

*Powers v. Woodlands Religious Community Inc.*,
  323 Fed. Appx. 300 (5th Cir. April 8, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27, 29

*Pridgen v. Department of Pub. Works/Bureau of Highways*,
  2009 U.S. Dist. LEXIS 111424 (D. Md. Dec. 1, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Rohr v. Salt River Project Agric. Improvement and Power Dist.*,
  555 F.3d 850 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Staub v. Proctor Hospital*,
  131 S. Ct. 1186 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 23, 24, 29, 34, 35

*Richardson v. Monitronics Int'l, Inc.*,
  434 F.3d 327 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Russell v. McKinney Hosp. Venture*,
  235 F.3d 219 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Sherman v. Dallas Independent School District*,
  2011 U.S. 13143 (N.D. Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                                 **Page vii**

*Stroud v. BMC Software, Inc.*,
　2008 U.S. App. 12244 (5th Cir. June 6, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Taheri v. Evergreen Aviation Ground Logistics Enters.*,
　2007 U.S. App. LEXIS 21309 (9th Cir. Aug. 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Texas Dep't of Community Affairs v. Burdine*,
　450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 44

*Thurman v. Yellow Freight Sys., Inc.*,
　90 F.3d 1160 (6th Cir.1996), *opinion amended by* 97 F.3d 833 (6th Cir.1996) . . . . . . . . . . 33

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,
　534 U.S. 184 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

*Vaughn v. Woodforest Bank*,
　665 F.3d 632 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Verhoff v. Time Warner Cable, Inc.*,
　299 Fed. Appx. 488 (6th Cir. Oct. 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**Statutes**

Family and Medical Leave Act, 29 U.S.C. §§2601 *et seq.* ("FMLA")

29 U.S.C. §2601(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

29 U.S.C. §2601(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. §2614 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 U.S.C. §2615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 U.S.C. §2615(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

29 U.S.C. § 2617(a)(1), (a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Americans with Disabilities Act of 1990, 42 U.S.C. §§12101 *et seq.* ("ADA").

42 U.S.C. §12102(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

42 U.S.C. §12102(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**　　　　　　　　　　　　　　　　　　　　**Page viii**

42 U.S.C. §12102(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

42 U.S.C. §12102(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 42

42 U.S.C. §12102(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

42 U.S.C. §12102(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

42 U.S.C. §12102(4)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**Regulations**

29 C.F.R. §1630.1(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

29 C.F.R. §1630.2(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

29 C.F.R. §1630.2(j)(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

29 C.F.R. §1630.2(j)(2)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 42

29 C.F.R. §1630.2(j)(6)(i)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**Rules of Civil Procedure**

FED. R. CIV. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

FED. R. CIV. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

FED. R. CIV. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 43

**Jury Instructions**

FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS – CIVIL §11.11.1 (2006) . . . . . . . . . . . . . . . . . . 28

**Law Review Articles and Treatises**

Brian East, *Struggling To Fulfill Its Promise: The ADA At 15,* 68 TEX. B. J. 614 (July 2005) . . 36

Alex B. Long, *Article: Introducing The New And Improved Americans With Disabilities Act: Assessing The ADA Amendments Act Of 2008,* 103 NW. U.L. REV. COLLOQUY 217 (Nov. 2008)36

*Litigating Employment Discrimination Cases,* James Publishing, Inc. (2009) . . . . . . . . . . . . 37

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                    **Page ix**

## Richard Law's Response

Richard Law opposes, in part, the motion for summary judgment, including related materials, filed by Defendant Hunt County, Texas ("the County"). *See* Dkt. 34 ("Motion"), 34-1 ("Brief"), and 34-2 ("Appendix").

**I.     This is an Employment Case. Law Brings Three (3) Claims Against The County, All Of Which Stem From Its Decision To Fire Him**

In Count One of *Law's First Amended Complaint* (Dkt. 24) at ¶¶93-10, Law sues the County for firing him. Law alleges that the County's employment decision violates the Family and Medical Leave Act, 29 U.S.C. §§2601 *et seq.* ("FMLA") – specifically, by interfering with his substantive rights and entitlements in that statute.

In Count Two of *Law's First Amended Complaint* (Dkt. 24) at ¶¶104-13, Law sues the County for firing him. Law alleges that the County's employment decision penalized him, *i.e.*, it constitutes unlawful discrimination/retaliation for his exercise of his FMLA rights.

Count Three of *Law's First Amended Complaint* is not brought against the County. Rather, that claim is brought solely against Sandy Berger, the other named Defendant. Consequently, it is not discussed in this Response.[1]

In Count Four of *Law's First Amended Complaint* (Dkt. 24) at ¶¶123-29*,* Law sues the County for firing him. Law alleges that the County made this employment decision on the basis of his actual disabilities and, thus, violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101 *et seq.* ("ADA").

---

[1] Berger has filed a separate motion for summary judgment. *See Defendant Sandy Berger's Mot. for Summ. J.* (Dkt. 33). This includes a brief (Dkt. 33-1), and an appendix (Dkt. 33-2).

In Count Five of *Law's First Amended Complaint* (Dkt. 24) at ¶¶130-36, Law sues the County for firing him. Law alleges that the County made this employment decision on the basis of its perception of him as disabled in violation of the ADA. Law hereby gives notice that he is withdrawing this claim.

## II.   Summary of Law's Arguments

*Count One (FMLA Entitlements)*. Summary judgment should be denied on this claim for two reasons. First, the County engaged in actionable "interference" when it fired Law before Law had a chance to exercise his FMLA rights. Second, the County ignores its own document – namely, its Discharge Notice, a/k/a "Employee Warning Record" – which states that Law was on "lite [sic] duty" <u>when the County fired him</u>. These two reasons are discussed in pages 22-25 below.

*Count Two (FMLA Retaliation/Discrimination)*.  Summary judgment should be denied on this claim for two reasons. First, and contrary to the averments by the County, Law satisfies the third prima facie element. Law does this by relying on the close temporal proximity – less than one month – between his protected activity and the County's subsequent employment action. Second, the summary judgment record contains substantial evidence which undermines the County's supposed reasons for firing Law. These two reasons are discussed in pages 25-35 below.

*Count Four (ADA/Actual Disability)*.  Summary judgment should be denied on this claim for three reasons. First, Law conclusively establishes that he has a "disability"  – the first prima facie element – as that word is defined in the ADA.[2] Second, Law presents competent evidence that he was replaced – the fourth prima facie element – by a non-disabled person named Amber Martel.

---

[2]  As noted elsewhere, Law seeks summary judgment on this one issue pursuant to FED. R. CIV. P. 56(f).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                **Page 2**

Third, the summary judgment record contains substantial evidence which undermines the County's

supposed reasons for firing Law. These three reasons are discussed in pages 35-44 below.

**III.    Summary of Law's Evidence, Together With Selected Authorities and Articles**

Law offers the following exhibits ("Ex."):

Ex. A       Excerpts from a transcript of a telephone hearing held by the Texas
            Workforce Commission ("TWC") on August 30, 2010 ("TWC
            Hrg.").
            (App. 1 – 16)

Ex. B       Certified copies of exhibits that the TWC admitted into evidence
            during the August 30, 2010 telephone hearing, which the TWC did
            *without objection* from either Law or the County ("TWC Hrg. Exs.")
            (App. 17 – 22)

Ex. C       Selections from *Defendants' Responses and Objections to Plaintiff's
            First Set of Interrogatories* ("Ans. to Interrog.")
            (App. 23 – 25)

Ex. D       Portions of Hunt County's pleading, titled *Original Answer of Hunt
            County to Plaintiff's First Amended Complaint and Jury Demand,*
            which is currently on file with the Court (Dkt. 25) ("Ans.")
            (App. 23 – 38)

Ex. E.      Excerpts, including exhibits, from Law's Deposition ("Law Dep.'")
            (App. 39 – 67)

Ex. F       Regulations to Implement the Equal Employment Provisions
            of the Americans With Disabilities Act, as Amended ("Regs.")
            (App. 68 – 87)

Ex. G       Copy of The ADA Amendments Act of 2008
            (App. 88 – 95)

Ex. H       Article: Introducing the New and Improved Americans with
            Disabilities Act: Assessing the ADA Amendments Act of 2008.
            (App. 96 – 107)

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                      **Page 3**

Ex. I          Declaration of Richard W. Law ("Law Dec.")
               (App. 108 – 115)

Ex. J          Declaration of Wade Forsman ("Forsman Decl.")
               (App. 116-118)

The foregoing evidence, authorities and articles are all contained in a separate document titled *Appendix in Support of Plaintiff Law's Response in Opposition to Defendant Hunt County's Motion for Summary Judgment* ("Appendix"), filed contemporaneously. The Appendix and its contents are all incorporated into this response brief for all purposes.

## IV.   Law Objects to Any New Evidence or Arguments by the County

Law objects to any attempt by the County to offer new evidence, to cure any evidentiary deficiencies in its Motion, or to argue new theories in any reply. That is because permitting any of the foregoing would deprive Law of a meaningful opportunity to respond.

## V.   Statement of Material Facts

1.     The County admits it employed Law from December 2004 until June 2010. Ans. (Ex. D) at p. 4, ¶¶4-7 (App. 26).

2.     According to the County, it first began employing Law on December 8, 2004, when it employed him as a detention officer in its jail, a/k/a "justice center." TWC Hrg. (Ex. A) at pp. 8-9 (App. 3-4); Ans. (Ex. D) at p. 5, ¶15 (App. 27); Mot. at p. 4, ¶B.1.

### A.   Law Begins to Experience Health Problems

3.     In August of 2009, Law discovered that he was suffering from a disease called peripheral arterial disease ("PAD"). As part of his PAD, Law also discovered that he was suffering from "peripheral neuropathy." Law Dec. (Ex. I) at ¶4 (App. 108).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                          **Page 4**

4.      As a result of his PAD and his peripheral neuropathy, Law sometimes gets clots and aneurysms. This condition substantially limits his ability to walk distances, and it also substantially limits his ability to stand for extended periods of time. He has burning sensations constantly. He has sharp, jabbing or electric-like pain every day, although not constantly. The affected parts of his body are extremely sensitive to the touch. He has difficulty sleeping because of feet and leg pain. He can experience a loss of balance, coordination, and muscle weakness. Occasionally, he drops things in his hand because he cannot hold onto them. Law Dec. (Ex. I) at ¶¶5-6 (App. 108).

> NOTE: The County acknowledges that Law was diagnosed with PAD "[o]n or near September, 2009." Mot. at pp. 4-5, ¶B.4. The County further acknowledges that around this time Law "provided a Medical Release to Hunt County that stated that he could work on light duty and that this light duty prevented [him] from prolonged walking without the ability to stop or rest due to circulation problems with his left leg." *Id. See also* Mot. at p. 5, ¶8 (noting that by reason of this health condition Law was "prevented from walking long distances without stopping to rest").

5.      The County acknowledges that "[o]n or about September 16, 2009, Plaintiff requested from Hunt County, and received, leave under the FMLA, which he took from early October until on or about December 4" 2009. Mot. at p. 5, ¶B.5. That is because in October 2009, Law underwent bypass surgery at the VA Hospital in Dallas on a clot inside his left leg. Law Dep. (Ex. E) at p. 17, (App. 40). The County acknowledges this condition is "related to his PAD." Mot. at p. 5, ¶5.

## B.      Law Transfers to Berger's Justice of the Peace Court, Where He Goes to Work as a Deputy Clerk

6.      According to the County, "[o]n or about December 7, [2009, Law] returned from medical leave and began his work as a deputy clerk in Judge Berger's Justice of the Peace Court." Mot. at p. 5, ¶7. Law was still on "light duty" at the time. Mot. at p. 5, ¶8. There, Law worked as a Deputy Clerk. He reported to Ms. Judy Travis, Chief Deputy Clerk, who reported to Berger. TWC

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                                    **Page 5**

Ans. (Ex. D) at pp. 6-7, ¶26 (App. 28-29).

7.     The parties have vastly different versions as to the circumstances giving rise to Law's

transfer. These differences are summarized below:

| BERGER'S AVERMENT IN HER AFFIDAVIT | LAW'S RESPONSE IN HIS DECLARATION |
|---|---|
| ¶4 – "In the fall of 2009, we had an opening in our staff. I received a call from Mr. Law expressing an interest in the job." | ¶16 --"[Paragraph 4] is a blatant lie. I at no time telephoned Berger before going to work there." |
| ¶5 – "In late Fall, 2009, in or near November, Ms. Travis and I met with Mr. Law to go over the duties of the job [of Deputy Clerk]. He said he could perform the required tasks[.] " | ¶17 – "[Paragraph 5] is false. I did not meet with Berger to discuss my job requirements, and . . . I did not tell her anything about being able to do the job of Deputy Clerk." |
| ¶6 – "I offered Mr. Law a position as deputy clerk[.]" | ¶18 – "[Paragraph 6] is wrong. Berger didn't offer me the job. Travis did." |

Berger's affidavit is attached to the County's Appendix at App. 62-65. Law's declaration is attached

to his Appendix at Exhibit I (App. 108-15).

8.     In his deposition Law described his new job of Deputy Clerk this way:

I was responsible for receiving citations issued by deputies and DPS troopers and entering them in the computer. I was responsible for issuing felony warrants. I was responsible for preparing marriage licenses. I was responsible for sending out prewarrant cards. I was responsible for sending letters of show cause for not paying – for individuals who had not fulfilled their obligation on tickets that they had received. Doing the reports, weekly report.  Law Dep. (Ex. E) at p. 20 (App. 41).

9.     Law parked his car in a handicapped parking space whenever he drove to work, and

he hung a blue handicapped tag on the rear-view window. Law Dec. (Ex. I) at ¶5 (App. 108).

NOTE: These tags are issued by the Texas Department of Public Safety ("DPS"). One way for a person to obtain a handicapped tag is to show, as Texas state law puts it, that s/he has a "mobility problem," one that "substantially impairs a person's ability to ambulate." TEX. TRANSP. CODE §681.001(5). *See* blank DPS form, attached to Forsman's Declaration in Exhibit J.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                    **Page 6**

Law estimates that the spaces where Berger and Travis parked were about 3-4 parking slots away, which meant that they walked past Law's car – with his blue handicapped tag hanging in plain view – into work. Law Dec. (Ex. I) at ¶5 (App. 108).

10.     The County offers no evidence showing that it ever gave any "write-ups" to Law at any time while he worked as Deputy Clerk – that is, from December 7, 2009 to the date of his discharge on June 4, 2010.[3]  In this regard, Law affirmatively denies receiving any such write-ups while working as a Deputy Clerk. Law Dep. (Ex. I) at ¶12 (App. 109).

### C.     Law Gets Mistreated While at Work

11.     The County, by and through Berger and Travis, failed miserably in training Law. In his deposition Law gave an example of what passed at the County for training:

> A.     . . . The first time I did prewarrant cards, for example, there was a very simple procedure that could have been followed, but they didn't tell me what the procedure was. They said, "Put this information on mailing labels and send certified mail out to these individuals." And it was a very simple process, but I was having to type those, that information in.
>
> And she [*i.e.,* Ms. Travis] and [a coworker named] Ms. Armendariz made light of it. They thought it was funny that it was taking me three times as long as it should have because she didn't show me the correct way of doing it.
>
> And I told them, I said, "I'd better not find out there's a different way of doing this, an easier way."
>
> And, sure enough, she told me the next time I had to do them that, "This is the way you should do them."
>
> Q.     Did she tell you why she hadn't made it clear to you on the –
> A.     No.
> Q.     – time you –

---

[3] Law acknowledges that when it discharged him the County tendered to him a form entitled "Employee Warning Record." However, despite its title, that was not a warning notice. Rather, it was a discharge notice.

A.    No.

Law Dep. (Ex. E) at pp. 22-23 (App. 42-43).

12.    Law told Berger they were not properly training him. Law Dep. (Ex. E) at p. 57 (App.

60). Law approached Berger with this concern in March 2010. Law Dep. (Ex. E) p. at p. 58 (App.

61). However, and despite this notice, there is no evidence that the County or Berger made any

changes or improvements in this area.

13.    Travis made disparaging comments about Law, including to members of the public.

In his deposition Law recounted the following incident:

> [T]here was a lady who came into the office that was processing – she was an
> apartment complex manager. She was processing eviction notices, which Ms. Travis
> handled. And she asked if I were a new employee. "Is this a new employee?" And
> Ms. Travis' response to her was, ***"Don't pay him no mind. He's just an old
> shithead."***

Law Dep. (Ex. E) at p. 29 (Emphasis added) (App. 47).

14.    Law brought Travis's "old shithead" comment to the attention of Berger, and Law

was present when Travis denied to Berger that she had made that comment. Law Dep. (Ex. E) at p.

32 (App. 49). There is no evidence of Berger taking any responsive action.

15.    Travis also made disparaging comments about Law to other County employees. For

example, once when Law was outside and another employee asked Travis where Law was, Travis

replied, "He [referring to Law] doesn't know how to do anything in here anyway." Law Dep. (Ex.

E) p. 26 (App. 44). Law also complained to Berger about this incident; however, that only made

matters worse for Law, as Law noted how Travis – who, after all, was his direct supervisor – "didn't

appreciate" him going to Berger, and how it "just compounded the problem." Law Dep. (Ex. E) at

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                        **Page 8**

p. 26 (App. 44), and p. 32 (App. 49).

16.     A coworker of Law's, Ms. Elizabeth Armendariz, followed Travis's lead and, like

Travis, began to behave in this same abusive way – for example, on one occasion calling Law "a

dumb messcan." Law Dep. (Ex. E) at p. 27 (App. 45) ("She [*i.e.,* Armendariz] didn't say Mexican.

She said dumb messcan").[4]

17.     Armendariz was also at the center of the following episode, which the County later

used to paint a false picture of Law having a so-called "anger issue," for it formed the basis for its

"second oral warning" against Law:

> It was during lunch one day. A lady from . . . Little Rock, Arkansas, had a ticket and
> she claimed that she had – someone had stolen her identity. And the prosecutor, Mr.
> Hollopeter, had, you know, worked an agreement with her that he would dismiss the
> case because he believed her.
>
> And so when he came back from lunch, it was still – the office was still closed. It was
> around 12:30 or so. . . And I asked him, I said, "That girl didn't get over on you, did
> she?"
>
> And he said, "No, I don't think so. I think she was telling the truth."
>
> Well, Ms. Armendariz goes in the chambers right before we go back to court and she
> tells him that I said Ms. Travis was mad at him and wanted to talk to him and I said
> –
>
> And Ms. Travis came flying out the chambers and said, "Did you say this?"
> I said, "No, I didn't say that."
>
> And Ms. Armendariz stepped out and said, "Yes, you did."
>
> I said, "No, I didn't say that. You know I didn't say that. And you need to quit
> snitching. . . ."

Law Dep. (Ex. E) at pp. 43-44 (App. 53-54). The County's version is different. Its version is

---

[4] Law is not Mexican. Law Dep. (Ex. E) at pp. 27-28 (App. 45-46).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                         **Page 9**

contained in a document that the County marked as "Exhibit 1" to Law's deposition (App.). According to that document, which appears to have been signed by Berger, and which in his deposition Law testified he had never seen before this lawsuit, Law "blew up in [the] office . . . [and he] let the prosecutor know that the whole office felt that defendant was guilty, which he had no right stating out loud to anyone but us. . . ." This unknown document, apparently signed by Berger, continues: "I did believe there was going to be a fight in [the] office due to his conduct, he [*i.e.,* Law] then stated this was environmental harassment." Law Dep. (Ex. E) at Ex. 1 (App. 62). In his deposition Law disputes the County's breathless version of events, saying among other things "I don't even know what environmental harassment is . . . I don't know what she's talking about, whoever wrote this." Law Dep. (Ex. E) at p. 52 (App. 58).

> NOTE: Nowhere does the County aver that it ever showed this Exhibit 1 to Law at any time during his employment.

18.    Exhibit 2 to Law's deposition is another example of a document that (a) the County never bothered to show to Law at any time during his employment with the County, and (b) is disputed by Law. Law Dec. (Ex. E) at Ex. 2 (App. 63). It is dated March 5, 2010, and it constitutes the County's so-called "first warning." The document purports to outline how, according to the County, Law "was told" by somebody – the document does not say who – that his work performance was "not up to the level" that it should be, and that he is "careless." Once again, Law's version of the events of March 5, 2010 is very different; according to Law, the trouble started when Travis pressed him about the employment status of a coworker was of a certain age named Ms. Gilbert:

> Ms. Gilbert was a 70-year-old part-time filing clerk. Ms. Travis called me in prior to terminating Ms. Gilbert and she asked me if I were on board with this termination.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                    **Page 10**

I said, "That's not my decision. That's – I have nothing to do with that."

She said, "Well, I need to know if everyone in the office is on board with that."

I said, "I don't have a choice to be. You know, that's not my position."

And she took offense to that. I could tell that she didn't like it. . . .

She had already told me probably three weeks to a month earlier that she already had someone in mind to take that part-time position . . . .

Nothing was said of . . . "Entering tickets, removal of sureties . . . **[at least a portion of Exhibit 2 is] not a truthful statement."** (Emphasis added).

Law Dep. (Ex. E) at pp. 53-54 (App. 58-59).

19.     That "someone in mind" turned out to be Ms. Amber Martel. She is in her twenties, and she is a life long family friend of Travis's daughter.  Law, who worked with Martel and was in the same "small office" with her during his employment there,[5] and who, obviously, knows how PAD and peripheral neuropathy affect a person, is virtually certain that Martel does not have these conditions. Law also saw Martel drive to work, and he never saw a handicapped sticker in her car. Law Dec. (Ex. I) at ¶15 (App. 109).

20.     Despite the foregoing "performance" issues relied on by the County, Travis nevertheless made the decision to have Law to train Martel. Law Dep. (Ex. E) at p. 58 (App. 61); Law Dec. (Ex. I) at ¶19 (App. 110).

NOTE: Even in this task, however, Travis continued to show antipathy toward Law. While he was training Martel, Law happened to get up and go to the counter to help a member of the public. This drew the ire of Travis. Law Dep. (Ex. E) at p. 58 (App. 61).

21.     Travis's antipathy even included making disparaging comments about Law's health.

---

[5] TWC Hrg. (Ex. A) at p. 12 ("We are a small office")(App. 7).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                  **Page 11**

For example, when Law advised both Berger and Travis that he was taking Lyrica®, a prescription drug which he took for his neuropathy, and which made it hard for him to concentrate, Travis, Law's direct supervisor, responded with snark, saying ***"I don't think it's the medicine."*** Law Dep. (Ex. E) at p. 34 (App. 50); TWC Hrg. (Ex. A) at p. 21 (App. 15).

22.     Incidents like those outlined in the foregoing paragraphs put a strain on Law who testified, "sometimes when I'd leave [work] there at the end of the day, I'd be a nervous wreck, [an] absolute nervous wreck." Law Dep. (Ex. E) at p. 31 (App. 48).

### D.     Law Needs Surgery

23.     Some time in early-to-mid-April 2010, Law went to the VA Hospital in Dallas.[6] There, health care providers advised him that he needed to have surgery – specifically, an angioplasty – on his left leg. The VA scheduled Law's surgery for April 28, 2010. Law Dec. (Ex. I) at ¶30 (App. 111).

24.     In its Motion at ¶14, the County acknowledges that Law asked for leave to undergo this surgery.

25.     Law saw Ms. Sandy Orange, the County's Human Resource Director, on April 16, 2010. *See* Affidavit of Sandy Orange, offered by the County at App. 62, at ¶2. Orange approved Law's request for leave, and she also told Law that any time off he were to take by reason of the angioplasty, including any follow-ups, would be covered by the FMLA. Law Dec. (Ex. I) at ¶31 (App. 111); Ans. (Ex. D) at pp. 8-9, ¶¶43-46 ("Defendant admits that Hunt County approved medical leave for Plaintiff") (App. 30-31).

---

[6] Law lives in Emory, Rains County, Texas, which is approximately an hour-and-a-half away from the courthouse. Law Dec. (Ex. I ) at ¶3 (App. 108).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                              **Page 12**

26.     According to her affidavit at ¶8, offered by the County at App. 67, Orange states that on April 16, 2010 she provided Law "with written notice that he was required to provide the County with a Medical Certification of Serious Health Condition by May 1, 2010." In other words, the County instructed Law that it wanted this form completed and back to it within three (3) days after Law's surgery – which, as noted in paragraph 23 *supra*, was set for April 28, 2010.

27.     However, Law did not have surgery on April 28, 2010 after all. That is because Law's health care providers postponed it, and they rescheduled it to May 5, 2010. Law Dec. (Ex. I) at ¶23 (App. 110). Thus, it was on May 5, not on April 28, when Law had surgery. Law Dec. (Ex. I) at ¶32 (App. 111).

28.     After his surgery, Law telephoned Travis, and he advised Travis that he would be back at work on Monday, May 10, 2010. Law Dec. (Ex. I) at ¶33 (App. 112). Law was absent from work during May 5-9, 2010 by reason of the angioplasty procedure. Ans. (Ex. D) at p. 9, ¶53 ("Defendant admits that Plaintiff was absent from work during May 5-9, 2010") (App. 31).

29.     Also on May 5, 2010, which is the very first day when Law showed up at the VA Hospital, Law gave his health care providers there the County's Medical Certification of Serious Health Condition. Law Dec. (Ex. I) at ¶32 (App. 111). In ¶9 of her affidavit, offered by the County at App. 68, Orange confirms that the form had been faxed over to her "after office hours" on May 7, 2010, which is two days after Law's surgery.  Cf. ¶26, *supra* (requiring form from Law within three (3) days of surgery).

30.     Law returned to work on May 10, 2010 as he had previously told Travis. Ans. (Ex. D) at pp. 9-10, ¶¶54-58 (App. 31-32). The very first thing Law did was make a copy of the medical

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                   **Page 13**

release, which he then gave to Travis – who, after all, was his direct supervisor. TWC Hrg. (Ex. A) at p. 20 (App. 14); Law Dec. (Ex. I) at ¶23 (App. 110).

31.    Travis permitted Law to work from May 10, 2010 until the date of Law's discharge. Ans. (Ex. D) at p. 10, ¶59 ("Defendant admits that Plaintiff generally worked from May 10, 2010, until his discharge from employment with Hunt County")(App. 32). Law could not have been allowed to return to work without a release. Law Dec. (Ex. I) at ¶23 (App. 110).  This conduct, *i.e.*, Law working, which is undisputed, supports Law's assertion that he did in fact provide Travis with a medical release from his health care provider.

32.    In her affidavit at ¶12, offered by the County at App. 72, Travis does not deny Law's contention that he gave her a medical release. Instead, Travis states only that she does not remember, *viz.,* "I do not remember [Law] providing me with any type of medical release or other paperwork concerning his medical absence [during May 5-9, 2010]."

33.    In her affidavit at ¶12, offered by the County at App. 72, Travis states, "I do not handle matters relating to medical leave." Law disputes this. In his declaration Law notes that he always gave Travis documentation on medical issues – which he estimates happened about once per month from the time of his transfer there.  Law Dec. (Ex. I) at ¶23 (App. 110). In other words, before this mystery as what happened to the release on May 10 – Law says he gave Travis a copy of a medical release, while Travis says she does not remember – there seems to have already been in place a custom and practice by which Law regularly gave such documents to Travis, which as his supervisor she apparently accepted without incident.

34.    In any event, and regardless of whether it was by accident or design, there seems to

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                                                     **Page 14**

be no real dispute that the release that Law tendered to Travis on May 10, 2010 failed to find its way

to Orange. Thus, Law was once again on the receiving end of abuse by the County, and he was

constrained to get another release, this one dated June 2, 2010, which Orange did receive via

facsimile on that date, *i.e.,* June 2, 2010, from Law's health care provider. TWC Hrg. (Ex. A) at p.

19 (App. 13). TWC Hrg. Exs. (Ex. B) at pp. 53-54-A (App. 21-22).[7]

36.     It is undisputed that between May 10, 2010 and the end of his employment, Law took

an additional one day off. Ans. (Ex. D) at p.10, ¶¶61 ("Defendant admits that, between May 10, 2010

and his termination, Plaintiff took one additional day of medical leave")(App. 32). Law took this one

day off for a followup visit on his angioplasty procedure. Law Dec. (Ex. I) at ¶11(App. 109).

### E.     Travis First Gives Law Permission to Take Two Days Off, Then She Changes Her Mind

36.     Around Memorial Day, *i.e.,* the end of May 2010, Law suffered through yet another

incident involving Travis. Law explains:

> I explained [to both Berger and Travis] in March that my brother, who lives in
> Florida, has cancer. And my sister planned a reunion at the end of May over the
> holidays. And I had asked for the Friday before Memorial Day and the Tuesday after
> off. And initially she [*i.e.,* Travis] told me I could take off. This was three weeks
> ahead of time and my wife had arrangements to take off from her work.
>
> And the Tuesday before I was supposed to take off on Friday, I came to work. About
> 20 minutes later she [Travis] says, "You're not going to be able to take off Friday.
> Ray [Travis's husband] and I are  going to the deer lease."
>
> And so I walked out [*i.e.*, outside] . . . But I wasn't . . . clomping, and it was the same
> thing I did every morning because . . . I go out front to smoke a cigarette. And I said,
> "I guess going to the deer lease is more important than me seeing my brother. . . ."

---

[7] This release allows Law to return to "regular duty" effective June 2, 2010. This release also states that
Law needed time off to go to the doctor "for evaluations" on August 9, 2010.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                    **Page 15**

And [Travis] came outside and she said, "Well, you don't have to get pissed off."

I said, "Well, it does piss me off, but I'll get over it. . . ."

Incidentally . . . [t]hat was prior to the start of the shift. . . .  I wasn't cussing. I wasn't screaming. I didn't holler. I just made a statement and she took offense to it. . . .

Law Dep.  (Ex. E) at pp. 41-43 (App.51-53). This is what passes for what the County calls Law's "anger problem."

37.     In a telephone hearing held by the TWC on August 30, 2010, Travis tried to justify her about-face by testifying, under oath, that Law "just did not have the time" to take any vacation. TWC Hrg. (Ex. A) at p. 11 (App. 6). Travis's testimony cannot be credited. For one thing, Travis could have told Law "no" in March when Law initially made his vacation request; however, and for whatever reason, Travis did not do this. More importantly, Travis's testimony is verifiably false. An audit *from the County*, discussed below, shows that despite what Travis testified to at the TWC, Law did in fact have had several days of vacation time, so he could in fact have taken those two days.

### F.     The County Fires Law

38.     On June 4, 2010, Berger, in the presence of Travis, told Law that he was fired, effective immediately. Ans. (Ex. D) at pp. 11-12, ¶¶67-72 (App. 33-34); TWC Hrg. (Ex. A) at p. 8 (App. 3). *See also* Ans. (Ex. D) at p. 10, ¶62 (App. 32).

39.     According to the County's answers to interrogatories at no. 5 – they are contained in Exhibit C of the Appendix (App. 24) – it was Berger, and only Berger, who "participated" in making the decision to fire law. Ans. (Ex. D) at pp. 10-11, ¶¶65-66 (App. 32-33). However, Orange gave different testimony to the TWC:

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                          **Page 16**

HEARING OFFICER: Okay. Well, were you involved in the decision to discharge the claimant?

ORANGE: Ms. – Judge Burger [sic] and Ms. Travis had come to me and discussed their issues that they were having, and they asked my opinion on that and what I thought. And, yes, I was basically included in that.

TWC Hrg. (Ex. A) at pp. 17-18 (App. 11-12).

40.     On June 4, 2010, Berger and Travis met with Law in Berger's Justice of the Peace chambers, at which time Berger advised Law that he, Law, had worked there for six months and that it was not "working out" and that, as a result, he was discharged, effective immediately. Law Dec. (Ex. I) at ¶7 (App. 108).

NOTE: At no time during this meeting did Berger – or for that matter, Travis – ever use the word "misconduct." See interrogatory answer no. 9, which is attached to Law's Appendix as Exhibit C (App. 25)(alleging that the County fired Law for "misconduct").

41.     Berger tendered to Law a form, signed by her, titled "Employee Warning Record" – which, as noted in footnote number 3 *supra*, was really not a warning at all, but was rather a notice of discharge. TWC Hrg. Exs. (Ex. B) at 29-A (App. 20); Law Dep. (Ex. E) at Ex. 7 (App. 67).[8]

42.     Near the top of the "Employee Warning Record," the County gives the following as one of its reasons for firing Law –

*"On 05/25/10 HR (Sandy Orange) required a Medical Release and as of today [i.e., June 4, 2010] <u>has not received.</u>"* (Underline added).

The County's stated reason – "has not received" – is verifiably false. According to her affidavit at ¶12, offered by the County at App. 68, Orange testifies that she did receive this release by June 4.

---

[8] Law Dec. (Ex. I) at ¶10 (App. 109)(noting that, unlike the form tendered during the TWC hearing, the form tendered by the County during Law's deposition did not contain the title "Employee Warning Record").

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                    **Page 17**

(Orange says she received the release on June 2.)

43.     Under the "County Remarks" portion of the "Employee Warning Record," the first two reasons given by the County for its decision to fire Law are the following:

> 1.     *Hired in on 12/07/09 – Lite [sic] Duty*
> 2.     *After six months – He is still on lite duty . . . .*

44.     Under the "County Remarks" portion of the "Employee Warning Record," at no. 2, the County avers that Law "has no hours acquired (sick or vacation) . . . ." However, in the Motion the County fails to disclose that its County Treasurer, Ms. Delores Shelton, conducted an audit after the County had fired him. The County's own audit revealed that far from having "no hours," the County owed Law for the following time – 7.9 hours of work and 32.04 hours vacation, for a total of 39.94 hours (which the County rounded up to an even 40 hours). Law Dec. (Ex. I) at ¶29 (App. 111).

45.     The "Employee Warning Record" contains a section called "WHEN WARNED AND BY WHOM" (emphasis in original). In that part of the form the County avers that it gave Law three warnings – one on March 5, 2010, another on April 23, 2010, and one on May 21, 2010. In the form the County also avers that all of these warnings were "oral." [9] However, nowhere on the form does the County state by "by whom" it contends it orally warned Law.

> NOTE: The County offers no evidence that Berger or Travis discussed these supposed "oral" warnings with Law during the June 4 discharge meeting. For his part, Law affirmatively denies that they did. Law Dec. (Ex. I) at ¶9 (App. 109).

> NOTE: The County offers no evidence that on any of these dates – March 5, April 23, or May 21 – did Berger or Travis or anyone else advise Law that he was being given an oral warning. For his part, Law affirmatively denies that they ever did. Law

---

[9] As noted in ¶10 *supra*, Law received no "write-ups" while employed as a Deputy Clerk.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                              **Page 18**

Dec. (Ex. I) at ¶13 (App. 109).

46.     Hunt County replaced Law with Martel. Law Dec. (Ex. I) at ¶15 (App. 109). She is discussed in ¶19, *supra.*

### G.     Events Post Discharge

47.     Law applied to the TWC for unemployment compensation. Ans. (Ex. D) at p. 13, ¶84 (App. 35).

48.     Hunt County chose to oppose Law's application for unemployment compensation. Ans. (Ex. D) at p. 14, ¶86 (App. 36).

49.     On August 30, 2010, the TWC held a telephone hearing. Orange and Travis appeared on behalf of the County. Ans. (Ex. D) at p. 14, ¶90 ("Defendant admits that the TWC held a hearing . . . Defendant admits that Judy Travis and Sandy Orange made statements during a telephone hearing before the TWC") (App. 36).

50.     During the TWC hearing, the hearing officer admitted, without objection from the County, a number of exhibits, including those offered by Law in this response. TWC Hrg. (Ex. A) at pp. 14-16 (App. 8-10).

## VI.     Evidentiary Burdens on Motions for Summary Judgment

Disposition of the Motion hinges on whether the County, as movant, satisfies its burden of establishing "no genuine issue as to any material fact." FED. R. CIV. P. 56(c). In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court articulated the following six (6) principles for courts to follow in making this determination:

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                                    **Page 19**

**First**, courts must review the summary judgment record "taken as a whole." *Id.* at 150 (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986)). Cherry picking is not permitted.

**Second**, courts "must draw all reasonable inferences in favor of the nonmoving party." *Reeves*, 530 U.S. at 150. Accord, *Citigroup Inc. v. Federal Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (court must "construe all facts and references in the light most favorable to the nonmoving party"); *Burrell v. Dr. Pepper/Seven Up Bottling Group*, 482 F.3d 408, 411 (5th Cir. 2007)(same); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) ("the court must be vigilant to draw every reasonable inference from the evidence in the record in a light most flattering to the nonmoving party").[10]

**Third**, courts "may not make credibility determinations or weigh the evidence." *Reeves,* 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Accord, *Parker v. State of La.*, 323 Fed. Appx. 321, 328, 2009 U.S. App. LEXIS 8632, *16 (5th Cir. April 23, 2009) ("We are not permitted to make a credibility assessment of the competing stories . . . this is an issue that must be resolved by a jury") (citing *Harvill v. Westward Communications, L.L.C*, 433 F.3d 428, 436 (5th Cir. 2005) (court cannot make credibility determinations or weigh the evidence when deciding a summary judgment motion)).

**Fourth**, courts must disregard all evidence favorable to the movant that the jury is not required to believe. *Reeves*, 530 U.S. at 150. Accord, *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir. 2011) (reversing summary judgment in employment discrimination case – "We also disregard any evidence favorable to [the movant] that the jury is not required to believe").

**Fifth**, courts should give credence to the evidence favoring the nonmovant. *Reeves*, 530 U.S. at 151. Accord, *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 480 (5th Cir. 2007) ("we are required to give credence to the evidence favoring the

---

[10] To varying degrees, the following cases criticized district courts below them for wrongfully engaging in credibility assessments, which resulted in those district courts ruling against employment plaintiffs – *Loudermilk v. Best Pallett Co., LLC*, 636 F.3d 312, 314-15 (7th Cir. 2011)*; Taheri v. Evergreen Aviation Ground Logistics Enters.*, 2007 U.S. App. LEXIS 21309 (9th Cir. Aug. 31, 2007); *Davison v. City of Minneapolis*, 490 F.3d 648 (8th Cir. 2007); *Nguyen v. Gambro BCT, Inc.*, 2007 U.S. App. LEXIS 14956 (10th Cir. June 20, 2007); and, *Maxfield v. Cintas Corp.*, 487 F.3d 1132 (8th Cir. 2007).

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                      **Page 20**

nonmovant") (internal quotes omitted).[11]

**Sixth**, courts may give credence to the evidence favorable to the movant only to the extent that it is "uncontradicted and impeached," at least to the extent that it comes from "disinterested witnesses." *Reeves*, 530 U.S. at 151. Accord, *Palasota*, 499 F.3d at 480-81.[12]

In short, Federal Rule of Civil Procedure 56 should be construed "with due regard . . . for the rights of persons asserting claims adequately based in fact to have those claims and defenses tried to a jury[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## VII.  Law Presents Triable FMLA Claims

### A.  Statutory Background

Congress enacted the Family and Medical Leave Act of 1993 ("FMLA")[13] after a protracted legislative battle.[14] The statute was created to protect an employee's right to take leave to attend to his medical needs and those of his family members. 29 U.S.C. §2601(b)(2).

The FMLA contains two distinct provisions. *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). The first provision creates a series of substantive rights, a/k/a

---

[11]  The Court of Appeals subsequently clarified and amended *Palasota* on other grounds. *See* 499 F.3d 491 (5th Cir. 2007).

[12]  For example, County employees do not qualify as "disinterested witnesses" as that term was used in *Reeves* and its progeny.

[13]  Family and Medical Leave Act of 1993, Pub. L. No. 103-3, 107 Stat. 6 (1993)(codified as amended at 29 U.S.C. §§2601-2654 (1999)).

[14]  The original bill, of what would eventually become the Family and Medical Leave Act of 1993, was introduced first by Representative Patricia Schroeder (D-CO), as the Parental Disability Leave Act of 1985 on April 4, 1985. See H.R. 2020, 99th Cong. (1st Sess. 1985). Additionally, President George H.W. Bush vetoed two provisions of the Act. See H.R. 770, 101st Cong. (1990) and S. 5, 102d Cong. (1991). President William Jefferson Clinton signed the final version on February 5, 1993, and the Act became effective for most employers on August 5, 1993. See S. 5, 103d Cong. (1993).

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                    **Page 21**

"entitlements."  29 U.S.C. §2614. The second provision is proscriptive: it bars employers like the County from penalizing, a/k/a "discriminating" or "retaliating," against employees who exercise their FMLA rights. 29 U.S.C. §2615. This case involves both FMLA provisions.

### B.    Substantive Rights and Entitlements

The County moves for summary judgment on Count One of *Law's First Amended Complaint* (Dkt. 24) at ¶¶93-10. There, Law sues the County for firing him. In this Count Law alleges that the County's employment decision violates the Family and Medical Leave Act, 29 U.S.C. §§2601 *et seq.* ("FMLA") – specifically, by interfering with his substantive rights and entitlements in that statute.

### 1.    Authorities

Count One is governed by Section 105 of the FMLA, codified at 29 U.S.C. §2615, which prohibits covered employers like the County from interfering with, restraining, or denying the exercise of their employees' rights under the statute. 29 U.S.C. §2615(a)(1). Section 105, called the "entitlement" or "interference" theory, is enforced under §107 of the FMLA, which imposes liability on "any employer who violates [29 U.S.C.] section 2615". . . . 29 U.S.C. §2617(a)(1), (a)(2).[15]

Significantly, unlawful interference with FMLA rights includes terminating an employee *__before__* he has the chance to exercise those rights. One court of appeals put it this way:

> **[I]t would be patently absurd if an employer who wished to punish an employee for taking FMLA leave could avoid liability simply by firing the employee before the leave begins.**

---

[15] The elements of this claim are (1) Law is an eligible employee under the FMLA, (2) the County is an employer subject to the requirements of the FMLA, (3) Law was entitled to FMLA leave, (4) Law gave notice to the County of his intention to take FMLA leave, and (5) the County denied him the benefits to which, under the FMLA, he was entitled. *Morgan v. Neiman Marcus Group, Inc.*, Civil Action No. 3:05-CV-00790-G, 2005 U.S. Dist. LEXIS 34541, *11  (N.D. Tex. Dec. 20, 2005).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                 **Page 22**

*Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 508 (3d Cir. 2009); *see also  Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006)(reversing summary judgment in favor of employer, where employee brought FMLA interference claim after his supervisor fired him <u>after</u> the employee had a biopsy to ascertain whether he had prostate cancer, but <u>before</u> he had undergone "Treatment Plan").

      2.    **Application**

          a.    **The County engaged in actionable "interference" when it fired Law before he had a chance to exercise his FMLA rights**

Count One hinges on the release received by Orange, dated June 2, 2010. TWC Hrg. Exs. (Ex. B) at pp. 53-A and 54-A (App. 21-22); Law Dep. (Ex. E) at Ex. 5 (App. 64). On the one hand, this release states that Law may "Return to Regular Duty" effective June 2, 2010. On the other hand, the release also states that Law shall "Return to Doctor for evaluation" on "August 9, 2010."

In its Brief at p. 5, the County cites only the first part of the release ("Return to Regular Duty"). The County does not discuss the other part of the release ("Return to Doctor for evaluation"). This is cherry picking, and it is improper. *Reeves*, 530 U.S. at 150 (requiring courts to review the summary judgment record "taken as a whole") (quoting *Matsushita Elec. Indus.*, 475 U.S. at 587).

In any event, there is no dispute that the County failed to provide Law with the leave requested by Law for August 9, 2010. That is because on August 9, 2010, Law was not a County employee; the County fired Law on June  4, 2010, *i.e.,* <u>before </u>Law had a chance to exercise that right (namely, "Return[ing] to [the] Doctor for evaluation").

The point is this. By firing Law effective June 4, 2010, the County "interfere[d] with" Law's substantive right to take leave on August 9, 2010. *See* 29 U.S.C. §2615(a)(1); *see also Erdman*, *Burnett*. Thus, the County violated this portion of the FMLA. A reasonable jury could so find.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                   **Page 23**

      **b.**      **The County ignores its own document – namely, its Discharge Notice, a/k/a "Employee Warning Record" – which states that Law was on "lite [sic] duty" <u>when the County fired him</u>**

In its Brief at p. 5, the County cites Law's deposition testimony at page 71, where it says that Law "admitted that he was released by his doctor for regular duty on June 2." From there, the County argues that because Law "admits" he was no longer on "lite duty" on June 4, the County could not have interfered with any of Law's FMLA rights when it fired him on that day.

The problem with this argument is that the County makes it without taking into consideration its own statements – specifically, those found in the Discharge Notice, a/k/a "Employee Warning Record." [16] Once again, the County is engaged in improper cherry picking. *Reeves*, 530 U.S. at 150 (requiring courts to review the summary judgment record "taken as a whole") (quoting *Matsushita Elec. Indus.*, 475 U.S. at 587).

The Discharge Notice, a/k/a "Employee Warning Record" was prepared and completed by the County. In this document the County wrote that Law was "still on lite [sic] duty" as of the date of the document, which was June 4, 2010 (not June 2), when it advised Law that it was firing him. The County gets to live with the statements it made in that document; the County also gets to explain to a jury why it now says something different, *i.e.*, that on June 4, 2010, despite what its own document says, Law was really <u>not</u> on "lite duty."

Of course, in ruling on a motion for summary judgment, courts may not credit one piece of evidence over another piece of evidence. To do so would require them to make a credibility assessment – which, of course, is improper. *Reeves,* 530 U.S. at 150 (quoting *Anderson*, 477 U.S.

---

[16] This document is located at TWC Hrg. Exs.  (Ex. B) at 29-A (App. 20), and at Law Dep. (Ex. E) at Ex. 7 (App. 67). *See also* Statement of Material Facts ("Facts") at ¶41.

at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").[17] Thus, for summary judgment purposes Law's deposition testimony, referenced in the County's Brief at p. 5, carries no more weight than the County's Discharge Notice, a/k/a "Employee Warning Record."

### C.    Discrimination/Retaliation

The County moves for summary judgment on Count Two of *Law's First Amended Complaint* (Dkt. 24) at ¶¶104-13. There, Law sues the County for firing him. In this Count Law alleges that the County's employment decision penalized him, *i.e.*, it constitutes unlawful discrimination/retaliation for his exercise of his FMLA rights.

### 1.    Authorities

Direct evidence in employment cases is rare. That is because "[e]mployers rarely leave concrete evidence of their retaliatory purposes and motives." *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994). As a result, most employment cases rely on circumstantial evidence. Such evidence "is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace v. Costa*, 539 U.S. 90, 100 (2003).

FMLA discrimination/retaliation cases are no exception. That is why in such cases the parties follow the familiar three-step process first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Powers v. Woodlands Religious Community Inc.*, 323 Fed. Appx. 300, 302 (5th

---

[17] Accord, *Parker*, 323 Fed. Appx. at 328 ("We are not permitted to make a credibility assessment of the competing stories . . . this is an issue that must be resolved by a jury") (citing *Harvill*, 433 F.3d at 436 (court cannot make credibility determinations or weigh the evidence when deciding a summary judgment motion)).

Cir. April 8, 2009) (vacating district court's grant of summary judgment on FMLA claim).[18]

To make a prima facie case of discrimination/retaliation under the FMLA, Law must show that: (1) he was protected by the FMLA; (2) he suffered an adverse employment decision; and either (3a) he was treated less favorably than an employee who had not requested leave under the FMLA, or (3b) the adverse decision was made because he took FMLA leave. With regard to the third prima facie element, Law "does not have to show that the protected activity is the only cause of his termination;" instead, he "need only show that 'the protected activity and the adverse employment action are not completely unrelated." *Id.*

Once Law provides sufficient evidence to establish a prima facie case, the burden of production shifts to Hunt County to proffer a legitimate nondiscriminatory reason for its decision. *Id*. Assuming Hunt County discharges its burden, Law must then adduce sufficient evidence to show that Hunt County's proffered reason is a pretext for discrimination/retaliation. *Id*.

### 2.    Application

The County does not challenge the first prima facie element, nor does it challenge the second. The County does, however, challenge the third prima facie element on page 7 of its Brief. There, the County asserts that as a matter of law Law cannot show that he was treated less favorably than any employee who had not requested leave under the FMLA. Law agrees. That leaves prima facie element 3.b, *viz.*, "the adverse decision was made because Law took FMLA leave." Law relies on this second prong to satisfy his burden of production with regard to the third element.

---

[18] *See also Garza v. Mary Kay, Inc.*, 2010 U.S. Dist. LEXIS 84586, *19 (N.D. Tex. Aug. 17, 2010) (Boyle, J.) (denying summary judgment on FMLA retaliation claim); *Martinez v. Neiman Marcus Group, Inc.*, 2006 U.S. Dist. LEXIS 3025, *24 (N.D. Tex. Jan. 25, 2006)(Solis, J.) (same).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                 **Page 26**

As previously noted, Law need only show that his exercise of protected activity and the County's subsequent adverse employment action in firing him "are not completely unrelated." *Powers,* 323 Fed. Appx. at 302 (citing *Mauder v. Metro Transit Auth. of Harris County*, 446 F.3d 574, 583 (5th Cir. 2006)). As one district court put it, to hold otherwise and require a greater burden, especially at this prima facie stage, would "obviate the need for creating a burden-shifting framework." *Munoz v. Echosphere, L.L.C.*, 2010 U.S. Dist. LEXIS 71913, *26 (W.D. Tex. July 15, 2010) (citing *Mauder*, 446 F. 3d at 583).

### a.  Timing

For prima facie purposes, "[t]iming can sometimes be a relevant factor . . . where the timing between a protected activity and an adverse employment action is suspiciously proximate." *Martinez,* 2006 U.S. Dist. LEXIS at *16 (quoting *Fabela v. Soccoro Ind. School Dist.,* 329 F.3d 409, 418, n. 19 (5th Cir. 2004)). The Fifth Circuit concurs. *See Stroud v. BMC Software, Inc.*, 2008 U.S. App. 12244, **16-17 (5th Cir. June 6, 2008) (FMLA case) (two and a half months short enough to infer a causal link).

Law easily satisfies his prima facie burden. As discussed previously, the record evidence is undisputed that Law went out on leave for angioplasty surgery beginning on May 5, 2010, that he was absent from work by reason of that surgery until he returned to work on May 10, 2010, and that the County fired him less than one month later on June 4, 2010. The record evidence also shows that Law's doctor released him to return to regular duty (and off light duty) effective June 2, 2010, and that, again, the County fired him on June 4, 2010, *i.e.,* two days later.[19]

---

[19] Knowledge can also support an inference of a causal link. See e.g., *Cones v. Duke Energy Corp.*, 367 F. Supp. 2d 1092, 1099-1100 (S.D. Tex. 2005). In this case, and as evidenced by the County's form titled "Employee

**b.    The County's argument that Law "would have been fired even if had not taken FMLA leave" is misplaced and inappropriate at this *prima facie* stage**

In its Brief at pp. 7-8, the County argues that summary judgment is warranted at this initial *prima facie* stage because, it says, Law "would have been fired even if had not taken FMLA leave." Tellingly, the County offers no authority in support of this argument. Likewise, the undersigned counsel is aware of none.[20]

The County's argument appears to be a mixed motive instruction. *See and compare* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS – CIVIL §11.11.1 (2006). Assuming that is what the County is advancing, then it suffers from two problems, both of them fatal. First, the Fifth Circuit regards mixed motives as "effectively that of proving an affirmative defense;" said another way, the Court of Appeals does not treat mixed motives as a defense to a plaintiff's burden of production at the prima facie stage. *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 333 (5ᵗʰ Cir. 2005).

Second, and as an affirmative defense, the County is required to plead it first, failing which it is waived. In this regard, the document on file with the Court, *Original Answer of Hunt County to Plaintiff's First Amended Complaint and Jury Demand* (Dkt. 25), contains no mixed-motive affirmative defense. *See id.* at pp. 22-23. The County should not be allowed to graft an additional burden onto Law at this prima facie stage, especially in the absence of any authority to do so.[21]

---

Warning Record" given to Law on June 4, 2010, there is no doubt that Berger, the County's putative decision maker, knew that Law had been on "lite duty" for virtually his entire employment there at the Justice of the Peace Court.

[20] Law reiterates his objection, made previously in Part IV, to any attempt by the County to offer new evidence, to cure any evidentiary deficiencies in its Motion, or to argue new theories in any reply.

[21] *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981) (prima facie stage "not onerous").

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                      **Page 28**

### 3.     Conclusion

Having satisfied all of the challenged elements of a prima facie case, it is now presumed that the County unlawfully discriminated/retaliated against Law. *See and compare generally id.* at 254.

### D.     The County's Proffered Rebuttal Reasons

The burden of production now shifts to the County, which must articulate one or more legitimate, non-retaliatory reasons for its decision to fire Law. *Powers*, 323 Fed. Appx. at 302. Given this *de minimis* legal standard, Law will assume here – for argument's sake only, and solely for purposes this motion – that the County has satisfied its burden at this stage.

### E.     Substantial Evidence Undermines the County's Supposed Reasons for Firing Law, and a Jury Must Assess Whether Those Reasons are Credible

The burden now returns to Law, who must come forward with evidence sufficient to show that the County's stated reasons are a pretext for its real, retaliatory purpose.[22]

### 1.     Evidence previously offered at the prima facie stage

To satisfy his burden at this pretext stage, Law may rely on evidence he previously offered in support of his prima facie case. *Reeves*, 530 U.S. at 143 (citing *Burdine,* 450 U.S. at 255 fn. 10); *Evans v. Houston,* 246 F.3d 344, 350 (5th Cir. 2001). Thus, Law re-offers the same evidence found on page 27.

---

[22]  *See and compare Reeves*, 530 U.S. at 143; *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (applying *Reeves* to retaliation claim and noting "that a factfinder may infer the ultimate fact of retaliation from the falsity of the explanation"). "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is **_likely_** to support an inference of discrimination [or retaliation] even without further evidence of the defendant's true motive." *Laxton v Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (emphasis added).  "No further evidence of discriminatory [or retaliatory] animus is required because 'once the employer's justification has been eliminated, discrimination [or retaliation] may well be the most likely alternative explanation.'" *Id.* (quoting *Reeves*, 530 U.S. at 147-48). Of course, at summary judgment, Law need only show a genuine issue of material fact. *Gee,* 342 F.3d at 345.

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                                             **Page 29**

### 2.    Additional evidence

To satisfy his burden at this pretext stage, Law also relies on the following additional evidence.

### a.    The County's "Employee Warning Record"

To establish pretext, one need look no further than this document. Law Dep. (Ex. E) at Ex. 7 (App. 67); TWC Hrg. Exs. (Ex. B) at 29-A (App. 20). The very first statement made by the County in that document in support of its decision to fire Law is – *"On 05/25/10 HR (Sandy Orange) required a Medical Release and as of today [i.e., June 4, 2010] has not received"* (Underline added).

**The County's statement is verifiably false.** According to her affidavit at ¶12, offered by the County at App. 68, Orange testifies that she <u>did</u> receive this release by June 4. (Orange states she received it on June 2.) See also Facts at ¶34.

Under the "County Remarks" portion of this document, the first two reasons given by the County for its decision to fire Law are the following:

> *1.    Hired in on 12/07/09 – Lite [sic] Duty*
>
> *2.    After six months – He is still on lite duty . . . .*

Reasonably construed, these reasons show that the County had problems with Law being on "lite duty." See also Facts at ¶21, where Travis expresses a negative attitude about Law's health.[23]

---

[23] See and compare cases where, as here with Law, the employer admitted, in some form or fashion, that an employee's health condition was a factor in its decision making. *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003) (statements regarding inability of plaintiff with blindness to do the job); *Butt v. Greenbelt Home Care Agency*, 2003 WL 685026, at *19 (N.D. Iowa 2003) (employer expressed concern about plaintiff's knee problem); *Morris v. City of New York*, 153 F. Supp. 2d 494, 504 (S.D.N.Y. 2001) (employer's overt references to plaintiff's sick record, together with employer's knowledge that the sick days were closely related to plaintiff's disability); *Nodelman v. Gruner & Jahr USA Pub.*, 2000 WL 502858, at *10 (S.D. N.Y. 2000) (employer told plaintiff that disability was one reason he was selected for layoff in workforce reduction).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                    **Page 30**

Under the "County Remarks" portion of this document, the County's statement that Law "has no hours acquired (sick or vacation)" is also verifiably false. Again, and as previously noted, the County's Treasurer conducted an audit after Law was fired. The audit revealed that instead of having "no hours," the County owed Law for the following time – 7.9 hours of work and 32.04 hours vacation, for a total of 39.94 hours (which the County rounded up to an even 40 hours). Facts at ¶44.

The County's document contains a section called "WHEN WARNED AND BY WHOM" (emphasis in original), where the County claims that it gave Law three "oral" warnings – one on March 5, 2010, another on April 23, 2010, and one on May 21, 2010. Curiously, however, the County fails to identify anywhere on this form WHO, on behalf of the County, it contends "orally" warned Law. Further, the County offers no evidence that on any of these dates – March 5, April 23, or May 21 – did Berger, Travis, or anyone else for that matter, advise Law, ***then and there and at that time***, that he was being given an oral warning. That is because the County failed to do this. Law Dec. (Ex. I) at ¶13 (App. 109). Instead, the County papered its file – not to help Law, but to have enough basis to get rid of him. A reasonable jury could so find.

### b.      Other examples of the County's lack of candor

In its answers to interrogatories (Ex. C) at no. 5 (App. 24), the County avers that it was Berger and only Berger who "participated" in the decision to fire Law. The County makes the same statement in its pleading. Ans. (Ex. D) at pp. 10-11, ¶¶65-66 (App. 32-33). However, the County's own Human Resource Director, Sandy Orange, contradicts the County's position with the following testimony:

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                    **Page 31**

HEARING OFFICER: Okay. Well, were you involved in the decision to discharge the claimant?

ORANGE: Ms. – Judge Burger [sic] and Ms. Travis had come to me and discussed their issues that they were having, and they asked my opinion on that and what I thought. And, yes, I was basically included in that.

TWC Hrg. (Ex. A) at pp. 17-18 (App. 11-12).

Moreover, Travis's statement that she does not "handle mattes relating to medical leave," set forth in her affidavit at ¶12, attached to the Motion at App. 72, is also disputed. Again, in his declaration at ¶23 (App. 110), Law states that he had been giving to Travis his medical documentation for his doctor visits ___for months___.

Further, and turning to what Travis actually did as opposed to what she says, the undisputed facts are that Law did work with only one absence from his return on May 10, 2010 to the day of his discharge on June 4, 2010. For all but the very last two days of that time, Travis and the County would have a jury believe that they let Law do this without a medical release. This asks too much.

Finally, and as the chart in the Facts at ¶7 shows, the parties also have a vastly different version of events as to how the County transferred Law in December 2009. Someone is lying. It is up to a jury to assess credibility.

### c.       Doubts about Law's supposedly poor performance

The County now roundly criticizes Law's allegedly poor job performance. Given its deficient training of Law, as outlined in the Facts at ¶11, this should come as no surprise. On the other hand, there is competent evidence that Travis thought enough of Law's job performance to have him train Martel (who eventually replaced Law). Facts ¶20. A reasonable jury could attach significance to this inconsistency.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment                                                                Page 32**

### d.      The County's shifting explanations

The County's explanations for firing Law have been in a state of flux. When she testified before the TWC, Travis stated that Law's errors were "small." TWC Hrg. (Ex. A) at p. 10 (App. 5). Now, in its answer to interrogatory answer 9, attached to the Appendix at Exhibit C (App. 25), Law's job performance, according to the County, has suddenly mushroomed into "misconduct."

The County's shift in this regard is highly noteworthy. Certainly, any employer may have several legitimate reasons to dismiss an employee. But when an employer, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."), *opinion amended by* 97 F.3d 833 (6th Cir.1996); *Kobrin v. University of Minn.*, 34 F.3d 698, 703 (8th Cir.1994) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext."). Such is the case here.

### e.      The County's open hostility towards Law

There is no dispute about the County's hostility towards Law. On need look no further than Travis's "old shithead" comment and Armendariz's "dumb messcan" comment. What is in dispute is why. Certainly a jury could reasonably infer that this hostility was because, unlike everybody else in the office, Law had to take time off for health reasons. *See and compare Flowers v. Southern Reg. Physician Servs.*, 247 F.3d 229 (5th Cir. 2001) ("cold shoulder" treatment can be evidence of discrimination).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                 **Page 33**

### 3.    The County's misplaced reliance on the same actor inference

In the Brief at p. 9, the County appears to assert that the "same actor doctrine" somehow trumps all of the foregoing evidence and authorities. Most assuredly, it does not.

First, the "same actor doctrine" is not really a "doctrine." Rather, it can be more accurately described as an inference. That is how the Court of Appeals has described it. *See e.g., Black v. Pan Am Labs., L.L.C.*, 646 F.3d 254, 260 fn. 4 (5th Cir. 2011) (referring to "same actor inference") (underline added); *Jackson v. Host Int'l, Inc.*, 426 Fed. Appx. 215, 220 (5th Cir. 2011)(same).

Second, the Fifth Circuit has observed that the same actor inference is not automatic. *See e.g., Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 fn. 16 (5th Cir. 2000). Such caution is especially warranted here, where as shown by the Facts at ¶7, the circumstances that give rise to Law's transfer are in dispute. Caution is also warranted because depending on the facts, the cat's paw doctrine as articulated in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011) may apply.

Finally, the same actor inference does not apply to this claim because Law's claim here focuses on what he did – specifically, Law engaged in protected activity. As the cases cited by the County illustrate, the same actor inference applies only to cases based on one's status – for example, one's age (*Brown* and *Schutze*) or one's national origin (*Penalver*).

### 4.    Conclusion

The record evidence, especially when considered together,[24] and taken as a whole,[25] is

---

[24] *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001)(reversing summary judgment observing, "[a] combination of factors, any of which judged on their own would be much less compelling, provide sufficient evidence to allow a reasonable jury to conclude that Cromwell's explanation for failing to hire Byrnie was a pretext for impermissible discrimination").

[25] *Reeves*, 530 U.S. at 150 (quoting *Matsushita Elec. Indus.*, 475 U.S. at 587).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment                                                    Page 34**

"substantial" as the Supreme Court used that word in *Reeves,* 533 U.S. at 144, and mandates the denial of summary judgment.

### F.        Conclusion

Congress passed the FMLA in part because it found that **"there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods**." 29 U.S.C. §2601(a)(4) (emphasis added). The County's unsavory treatment of Richard Law underscores the wisdom of this Congressional finding. Accordingly, the County's motion for summary judgment on Law's two FMLA claims should be denied.

## VIII.   Law Presents a Triable ADA Claim

The County moves for summary judgment on Count Four of *Law's First Amended Complaint* (Dkt. 24) at ¶¶123-29. There, Law sues the County for firing him. In this Count Law alleges that the County made this employment decision on the basis of his actual disabilities and, thus, violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101 *et seq.* ("ADA").

### A.        ADA Amendments Act of 2008

On September 25, 2008, President George W. Bush signed into law the ADA Amendments Act of 2008 ("ADAAA"). *See* Americans with Disabilities Act of 2008, Pub. L. No. 110-325, 112 Stat. 3553, 110th Cong., 2d Sess. (Sept. 25, 2008). Congress passed the ADAAA by an overwhelming, bipartisan margin: the Senate passed it unanimously on September 11, 2008, and the House passed it by voice vote on September 17, 2008. A true and correct copy of the ADAAA, consisting of eight pages, is attached as **Exhibit G** (App. 88-95).

The ADAAA took effect on January 1, 2009. Because the events made the basis of Law's

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                 **Page 35**

ADA claim all occurred after that effective date, the ADAAA applies to this case. Although Congress left the ADA's three-part definition of "disability" intact – *i.e.*, actual disability, record of disability, and perceived or "regarded as" disability – Congress made significant changes as to how courts are to interpret those categories. The portions of the ADAAA that are material to the County's Motion are discussed below.

### 1.     The ADAAA broadens the interpretation of the word "disability"

Since the enactment of the original ADA in 1990, the definition of the word "disability" has effectively been an insurmountable hurdle for plaintiffs. One commentator explained why:

> In order to be protected by the Act, one must first show the existence of a disability. To put it mildly, this hasn't been an easy task. As originally drafted, the definition was vague, and courts tended to interpret the definition narrowly. People with a wide variety of serious physical or mental impairments, ranging from AIDS to cancer to bipolar disorder, have been found not to have disabilities under the ADA. In one case, an individual with cancer brought suit against his employer and died before the resolution of the case, only to be told (posthumously) that the condition that killed him really wasn't a disability under the ADA.[26]

Alex B. Long, *Article: Introducing The New And Improved Americans With Disabilities Act: Assessing The ADA Amendments Act Of 2008,* 103 Nw. U.L.Rev. Colloquy 217, 218 (Nov. 2008). A true and correct copy of this article is attached hereto as **Exhibit H** (App. 96-107).

That has changed. The word "disability" is now to be interpreted broadly. The Rules of Construction found in the four corners of the statute now require that the definition of disability "shall be construed . . . in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this Act." 42 U.S.C. §12102(4)(A). The Regulations have the same

---

[26] The referenced case is *Hirsch v. National Mall & Serv., Inc.*, 989 F. Supp. 977 (N.D. Ill. 1997). *See also* Brian East, *Struggling To Fulfill Its Promise: The ADA At 15,* 68 Tex. B. J. 614 (July 2005).

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                          **Page 36**

wording. *See* Regulations **(Ex. F)** (App. 68-87) at 29 C.F.R. §1630.1(c)(4), 74 Fed. Reg. at 48439.[27]

The ADAAA also returns courts' focus to where it properly belongs – on the conduct of the defendant employer. The Act provides that the primary subject in ADA cases should no longer be on whether a plaintiff does or does not have a disability; "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *See* The ADA Amendments Act of 2008 **(Ex. G),** Pub. L. 110-325, §2(b)(5), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101. Instead, the proper focus should be on "whether [covered entities like the County] have complied with their obligations." *Id.* [28]

In enacting the ADAAA, Congress expressly disapproved and overturned several Supreme Court decisions that it perceived were overly restrictive. *See* The ADA Amendments Act of 2008 **(Ex. G),** Pub. L. 110-325, §§2(a)(5) and (b)(4), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. 12101. *See also Meinelt v. P.F. Chang's China Bistro, Inc.*, 787 F. Supp. 2d 643, 651 (S.D. Tex. 2011) ("Congress found that the decisions [of the Supreme Court] had created an inappropriately high level of limitation necessary to obtain coverage under the ADA"); *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1184 (E.D. Tex. 2011) (Schell, J.) (same);

---

[27] *See also Rohr v. Salt River Project Agric. Improvement and Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009)("Beginning in January 2009, 'disability' was to be broadly construed and coverage will apply to the 'maximum extent' permitted by the ADA and the ADAAA"); *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 492 n. 2 (6th Cir. Oct. 24, 2008) ("the definition of 'disability' in [the ADA] shall be construed in favor of broad coverage of individuals under this Act"); *Fournier v. Payco Foods Corp.*, 611 F. Supp. 2d 120, 129 n. 9 (D.P.R 2009)("The overarching purpose of the act is to reinstate the 'broad scope of protection' available under the ADA"); *Kingston v. Ford Meter Box Co., Inc.*, 2009 U.S. Dist. LEXIS 31710, **11-12 (N.D. Ind. April 10, 2009)(similar); *Brodsky v. New England School of Law*, 617 F. Supp. 2d 1, 4 (D. Mass 2009)("the ADA amendment is undoubtedly intended to ease the burden of plaintiffs bringing claims pursuant to that statute").

[28] *See also Litigating Employment Discrimination Cases,* James Publishing, Inc. (2009) at § 1:93 (Congress enacted the ADAAA, in part, "to direct the focus to whether a qualified individual has been discriminated against, rather than on whether the individual is a person with a disability").

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                              **Page 37**

*Cook v. Equilon Enters., L.L.C.*, 2010 U.S. Dist. LEXIS 113871, *17 (S.D. Tex. Oct. 26, 2010) ("The ADAAA rejected what Congress perceived to be the Supreme Court's unduly restrictive approach").

### 2.   The ADAAA broadens the interpretation of the phrase "substantially limits"

### a.   Past standards rejected

The ADAAA rejects the holding in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) that the term "substantially" in the definition of "disability" under the ADA must "be interpreted strictly to create a demanding standard for qualifying as a disability." *See* The ADA Amendments Act of 2008 **(Ex. G),** Pub. L. 110-325, §2(b)(4), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101. The ADAAA also rejects the view that "substantial" requires proof of a restriction that is severe. *Id.*

The ADAAA states that the *Toyota Motor* standard for assessing "substantially limits," both in the Supreme Court and as applied by lower courts in numerous decisions, "has created an inappropriately high level of limitation necessary to obtain coverage under the ADA." *See* The ADA Amendments Act of 2008 **(Ex. G),** Pub. L. 110-325, §2(b)(5), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101.[29]

The Regulations are consistent. They state that "[a]n impairment need not prevent, or significantly or severely restrict . . . a major life activity in order to be considered a disability." *See*

---

[29] The Findings in the ADAAA also disapprove of the EEOC's Title I regulation that defines the term "substantially limits" to mean "significantly restricted;" Congress found that this sets too high a standard. Pub. L. 110-325, §2(a)(8), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101. One explicit purpose of the ADAAA is to reject that standard. Pub. L. 110-325, §2(b)(6), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                          **Page 38**

Regulations (**Ex. H**) at 29 C.F.R. §1630.2(j), 74 Fed. Reg. at 48440.

### b.    Broad construction mandated

"Substantial limitation," like all of the terms found in the ADA's definition of "disability," must be construed as broadly as possible. *See* 42 U.S.C. §12102(4)(B). *See also e.g., Franchi v. New Hampton School*, 656 F. Supp. 2d 252, 258-59 (D.N.H. 2009)(sufficient showing that eating impairment substantially limited plaintiff's eating under the ADAAA's new broad construction); *Pridgen v. Department of Pub. Works/Bureau of Highways,* 2009 U.S. Dist. LEXIS 111424, **15-16 n. 17 (D. Md. Dec. 1, 2009) ("Under the ADA Amendments Act of 2008, a person who has lost sight in one eye but retains full use of his other eye is 'disabled.' Disability is to be construed 'in favor of broad coverage . . . .""). *See also* Regulations (**Ex. H**) at 29 C.F.R. §1630.2(j)(2)(i), 74 Fed. Reg. at 48440 ("the term 'substantially limits' . . . shall be construed in favor of broad coverage of individuals to the maximum extent permitted by the terms of the ADA and should not require extensive analysis").

Substantial limitations should be measured against "most people in the general population." H.R. Rep. 110-730, Pt. I, 110th Cong., 2d Sess., at p. 9 (June 28, 2008)(describing the legislative history of the original ADA). In defining "substantially limited," the Regulations also use the phrase "most people," and they emphasize that "[t]he comparison of an individual's limitation to the ability of most people in the general population often may be made using a common-sense standard, without resorting to scientific or medical evidence." *See* Regulations (**Ex. H**) at 29 C.F.R. §1630.2(j)(2)(iv), 74 Fed. Reg. at 48440. *See e.g., EEOC v. AutoZone, Inc.,* 630 F.3d 635 (7th Cir. 2010) (plaintiff need not present medical testimony to raise a triable issue that he is substantially limited in a major life

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                    **Page 39**

activity).

### 3.     The ADAAA includes episodic conditions and those in remission

An impairment that is episodic or is in remission is now a disability if it would substantially

limit a major life activity when active. 42 U.S.C. §12102(4)(D), as amended. The Regulations are

consistent.

### 4.     The ADAAA expands the definition of "major life activities"

As previously noted, one purpose of the ADAAA was to reject the analysis in *Toyota Motor*

*Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002), which held that the term

"major" in the ADA's definition of disability must be interpreted strictly to create a demanding

standard for disability, and that the term refers only to "activities that are of central importance to

most people's lives." Thus, these standards no longer apply.

Under the ADAAA, the phrase "major life activities" now includes, among things, "sleeping,

walking, standing, . . ., [and] concentrating . . . . 42 U.S.C. §12102(2)(A). The phrase "major life

activities" also "includes the operation of major bodily functions, including but not limited to . . .

neurological . . . functions." *Id*. at §12102(2)(B).

The ADAAA provides that a plaintiff needs to identify one and only one major life activity

to have a disability. 42 U.S.C. §12102(4)(C), as amended. This confirms that an individual is not

excluded from coverage because of an ability to do many things, so long as the individual is

substantially limited in one major life activity. Further, the Regulations state, "The determination

of whether an individual has a disability does not depend on what an individual is able to do in spite

of an impairment." *See* Regulations (**Ex. H**) at 29 C.F.R. §1630.2(j)(6)(i)(C), 74 Fed. Reg. 48442.

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                          **Page 40**

### B.      Application – the Prima Facie Stage

In its Brief at pp. 11-13, the County argues that the County cannot establish a prima facie case of disability discrimination for two reasons. On page 11, the County states that Law does not suffer from a "disability" as that word is defined in the ADA and which, as the County correctly points out, is the first prima facie element. On page 13, the County cites the fourth and final prima facie element, or at least part of it, arguing that Law "was not treated less favorably than non-disabled employees," and that, as a result, he cannot establish a prima facie case. Both of these reasons lack merit.

### 1.      Law has a "disability" as that word is defined in the ADA; thus, he conclusively establishes the first prima facie element

A straightforward, three-step application of the statute – specifically, 42 U.S.C. §12102(1)(A), which defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities"  – compels the conclusion that Law was actually disabled for ADA purposes at the time of his discharge.

*Step One.* Law had a physical impairment. That impairment was PAD and peripheral neuropathy. The evidence make this plain, and County has offered no evidence *contra.*

*Step Two.* Law identifies the following major life activities, all of which are expressly recognized by the statute – sleeping, walking, standing, and concentrating . 42 U.S.C. §12102(2)(A). Law also identifies his neurological function as a major life activity. *Id*. at §12102(2)(B).

*Step Three.* The third step is to ascertain whether Law's impairment PAD and peripheral neuropathy limit these major life activities to a degree that is "substantial." The answer is clearly yes. As previously noted, "substantial limitation," like all of the terms found in the ADA's definition of

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                              **Page 41**

"disability," must be construed as broadly as possible. *See* 42 U.S.C. §12102(4)(A). Also as previously noted, whether Law's limitation is "substantial" is determined by comparing Law to "most people in the general population" without resorting to scientific or medical evidence." *See* Regulations (**Ex. H**) at 29 C.F.R. §1630.2(j)(2)(iv), 74 Fed. Reg. at 48440; *see also AutoZone, Inc.,* cited *supra*. In his declaration Law stated the following:

> As a result of my 'PAD' – that's what peripheral artery disease is called for short – and my peripheral neuropathy, I sometimes get clots and aneurysms. I can't walk nearly as far as other people can, so much so that I have had to get a handicapped sticker for my car. (I had this sticker while I was working in the Justice of the Peace Office.) I have attached a copy of that handicapped tag to this declaration. Sandy Berger and Judy Travis parked about 3-4 slots away from where I parked, and they would have to walk past my car, complete with the blue handicapped tag hanging from my rear view mirror, in order to go into the office.

> I also can't stand up for nearly as long as regular folks. When I take the prescription drugs that the doctors have given me for my condition – for example, Lyrica, which I had to take when I was working at the Justice of the Peace Office – I have a hard time concentrating.  I constantly have a burning sensation in my limbs, and I also have sharp, jabbing or electric-like pain every day (although that's frequent, it's not constant). The parts of my body that are affected by my PAD and peripheral neuropathy are extremely sensitive to the touch. I have a very hard time sleeping because of the pain in my feet and legs; sometimes I can't sleep at all. Also, I sometimes lose my balance and coordination, and I experience weakness in my muscles. For example, I have dropped things because my hand muscles cannot hold onto them.

Law Dec. (Ex. I) at ¶¶5-6 (App. 108). Further, and at least with the major life activity of walking, one need only recall the blue handicapped sticker hanging from his rear view mirror to see that Law's ability is indeed "substantially" less than the general population.

### a.    The cases cited by the County are distinguishable

All but one of the cases cited by the County in its Brief at pp. 12-13 involve the "old" ADA. The only case that was cited in the Brief and that might arguably apply under the "new" ADA was

**Plaintiff Richard Law's Brief in Support of His**
**Opposition to Defendant Hunt County's**
**Motion for Summary Judgment**                                                    **Page 42**

*Sherman v. Dallas Independent School District*, 2011 U.S. 13143 (N.D. Tex. 2011). *Sherman* did involve an episode that was alleged to have taken place in October 2009, *i.e.,* after the enactment of the "new' ADA. However, the ADA claim in *Sherman* was brought by a *pro se* plaintiff, and a U.S. magistrate judge dismissed it in an unpublished opinion pursuant to Fed. R. Civ. P. 12(b)(6). There is no meaningful discussion in that case of "disability" as defined in the new ADA.  *Sherman* adds nothing to this case.

### b.      Law requests summary judgment on the issue of disability

The evidence discussed herein does more than create a fact issue. Rather, it conclusively establishes that Law had one or more an actual disabilities as defined by the ADA. Accordingly, Law asks that the Court, after giving notice to the County, as well as a reasonable time for the County to respond, enter an order finding that Law has an actual "disability" as defined by the ADA by reason of his PAD and his peripheral neuropathy. The Court is authorized to enter such an order pursuant to Fed. R. Civ. P. 56(f). *See also e.g., Norton*, 786 F. Supp. 2d at 1184 (where court gave notice to summary judgment movant of its intent to find that nonmovant did suffer from ADA disability).

### 2.      Law satisfies the fourth and final prima facie element

In its Brief at p. 11, the County identifies the fourth and final element as requiring Law to show that "he was replaced by a non-disabled person or was treated less favorably than non-disabled employees." On page 13 of the Brief, the County argues that Law cannot meet the latter prong of this element – specifically, that Law cannot show that he "was treated less fairly than non-disabled employees."

Curiously, the County does not contend that Law was not replaced by a non-disabled person.

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                                **Page 43**

That is because it can't. Law was replaced by Martel, who is in her mid twenties and is not disabled. Law Dec. (Ex. I) at ¶15 (App. 109). For this reason Law satisfies his burden of production with regard to the fourth and final prima facie element.[30]

### C.  Application – The County's Proffered Rebuttal Reasons

As with the FMLA discrimination/retaliation claim, the burden of production now shifts to the County, which must articulate one or more legitimate, non-discriminatory reasons for firing Law. Given this *de minimis* legal standard, Law will assume here – for argument's sake only, and solely for purposes of this motion – that the County has satisfied its burden at this stage.

### D.  Application – Substantial Evidence Undermines the County's Supposed Reasons for Firing Law, and a Jury Must Assess Whether Those Reasons are Credible

Law incorporates here the same arguments and evidence that he offered at this stage with regard to the FMLA discrimination/retaliation claim. Those arguments are found in this Response at pages 29-34, *supra*. [31]

### IX.  Conclusion

The Motion should be denied.

Date: March 26, 2012

---

[30] *Burdine,* 450 U.S. at 253 (prima facie stage "not onerous").

[31] In its Brief at p. 13, the County argues that Law must satisfy its burden *"by a preponderance of the evidence."* That is incorrect. At issue is the County's motion for summary judgment, so Law need only show that there is a genuine issue of material fact.

Respectfully submitted,


By:     /s/ Wade A. Forsman

Wade A. Forsman
*Attorney-in-Charge*
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
Tel: 903.689.4144
Fax: 903.689.7001
forsmanlaw@verizon.net

**Attorney for Richard Law, Plaintiff**

**Certificate of Service**

I certify that a copy of the foregoing document has been served upon the following counsel of record pursuant to the Federal Rules of Civil Procedure and the Local Rules on this the **26th day of March 2012**: Thomas P. Brandt of Fanning Harper Martinson Brandt & Kutchin, P.C., Two Energy Square, 4849 Greenville Ave., Suite 130, Dallas, TX 75206.

/s/ Wade A. Forsman

**Plaintiff Richard Law's Brief in Support of His
Opposition to Defendant Hunt County's
Motion for Summary Judgment**                                                      **Page 45**