IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD LAW | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | Civil Action No. 3:11-CV-806-G |
| | § | |
| HUNT COUNTY, TEXAS and | § | |
| SANDY BERGER | § | |
| | § | |
| Defendants | § | |

**DEFENDANT HUNT COUNTY'S REPLY TO PLAINTIFF'S RESPONSE TO ITS MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Hunt County and, in accordance with the requirements of Local Civil Rules 7.1, 7.2 and 56.5(b), files this Reply to Plaintiff's Response to Hunt County's Motion for Summary Judgment, and in support thereof respectfully show the following:

**I.**
**SUMMARY**

Hunt County is entitled to summary judgment on Plaintiff's FMLA Entitlement Claim because Plaintiff was granted every leave he requested under the FMLA.

Hunt County is entitled to summary judgment on Plaintiff's FMLA Discrimination and Retaliation Claim because (1) Plaintiff has failed to set forth a prima facie case of discrimination and retaliation under the FMLA; (2) Plaintiff has admitted that Defendant has satisfied its burden of proving that it had legitimate, non-discriminatory reasons for Plaintiff's termination; and (3) Plaintiff has admitted that he did not perform his job well and has failed to show that reasons offered by the Defendant for his firing were a mere pretext for discrimination.

Hunt County is entitled to summary judgment on Plaintiff's ADA Claims because (1)

Plaintiff has failed to make a prima facie case for discrimination under the ADA, and (2) Plaintiff has admitted that there is evidence that there were legitimate, non-discriminatory reasons for his discharge and he has not successfully shown that Hunt County's legitimate reasons for terminating the Plaintiff were merely pretext for discrimination.

## II.
## TABLE OF CONTENTS

I. Summary ............................................................................................................................. 1

II. Table of Contents ............................................................................................................. 3

III. Table of Authorities ........................................................................................................ 4

IV. Reply ................................................................................................................................ 5

    A.    Hunt County is entitled to summary judgment on Plaintiff's FMLA Entitlement Claim because no substantive rights under the FMLA were denied to the Plaintiff. ................................................................................... 5

    B.    Hunt County is entitled to summary judgment on Plaintiff's FMLA Discrimination and Retaliation Claim. ................................................................ 7

        1.    Plaintiff has not established a prima facie case of discrimination or retaliation under the FMLA because Plaintiff would have been fired even if he had not taken FMLA leave. ............................................. 7

        2.    Judge Berger had a legitimate, non-discriminatory reason for her actions. ................................................................................................. 8

        3.    Plaintiff has failed to establish that Judge Berger's legitimate, non-discriminatory reasons for hiring Plaintiff are a pretext for discrimination. ........................................................................................ 9

    C.    Hunt County is entitled to summary judgment on Plaintiff's ADA Claims. ......... 12

        1.    Plaintiff has failed to establish a prima facie case for discrimination under the ADA. ............................................................ 12

        2.    There were legitimate, non-discriminatory reasons for Plaintiff's discharge. ............................................................................................. 14

        3.    Plaintiff cannot establish that Defendant's reasons for discharging Plaintiff are a pretext for discrimination. ................................................. 14

V. Conclusion ...................................................................................................................... 14

# III.
## TABLE OF AUTHORITIES

**Cases**

*Amsel v. Texas Water Development Board,* No. 11-50255, 2012 U.S. App. LEXIS 5681, at *17 (5th Cir, March 19, 2012) ............................................................................... 8

*Bennett v. Calabrian Chems. Corp.*, 324 F. Supp. 2d 815 (E.D. Tex. 2004), *aff'd.* 2005 U.S. App. LEXIS 4565 (5th Cir. Tex. 2005) .............................................................. 14

*Bocalbos v. Nat'l. Western Life Ins. Co.,* 162 F.3d 379 (5th Cir. 1998) ......................................... 9

*Brown v. CSC Logic, Inc*., 82 F.3d 651 (5th Cir. 1996) ................................................................ 12

*Burnett v. LFW Inc.,* 472 F.471, 476 (7th Cir. 2006) ..................................................................... 7

*Erdman v. Nationwide Ins. Co.,* 582 F.3d 500 (3d Cir. 2009) ........................................................ 6

*Penalver v. Res. Corp. of Am.,* No. 3:10-CV-0280-D, 2011 U.S. Dist. LEXIS 53330 (N.D. Tex. May 18, 2011) ......................................................................................... 12

*Schutze v. Fin. Computer, Software, LP*, NO. 3:04-CV-0276-H ECF, 2006 U.S. Dist. LEXIS 73734 (N.D. Tex. Sept. 29, 2006) ................................................................... 12

*Shaneika Smith v. Southwestern Bell Telephone Company,* No. 11-10506, 2012 U.S. App. LEXIS 282 (5th Cir.  Jan. 5, 2012). .................................................................. 12

*Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180 (5th Cir. 1997) .................................................... 8

## IV.
## REPLY

**A.  Hunt County is entitled to summary judgment on Plaintiff's FMLA Entitlement Claim because no substantive rights under the FMLA were denied to the Plaintiff.**

There is no evidence that any FMLA entitlement was denied to the Plaintiff during his entire tenure with Hunt County. *All* of Plainitiff's requests for FMLA leave, in 2007, 2008, 2009 and 2010, were granted. Dkt. 34-2, p. 68 [Aff. of S. Orange, ¶¶ 3-7]. Hunt County was lenient with Plaintiff in its enforcement of its FMLA policies, so as to demonstrate its willingness to permit him to take his leave. Plaintiff's request for FMLA leave in the Spring of 2010 was promptly granted on the same day the Plaintiff requested the leave, even though the Plaintiff had given Hunt County only 12 days notice of the surgery when the County routinely requests 30 days notice of surgery. Dkt. 34-2, p. 40, 41, 47 [Applic. for FMLA Leave dated 4/16/2010].[1] Similarly, Plaintiff was required to furnish a Certification of Health Care Provider for Employee's Serious Health Condition *before* his surgery began, and Hunt County retained the discretion to delay commencement of his leave until the Certification was received. *Id.* However, Plaintiff did not return the Certification until after his surgery was complete. Dkt. 34-2, p. 55.[2] Nonetheless, despite his inattention to detail (a trait that Judge Berger and her staff repeatedly experienced when he performed his work duties), Hunt County did not delay Plaintiff's leave. Dkt. 34-2, p. 55; *Id.* at p. 69 [Aff. of S. Orange ¶ 9]. Also, Plaintiff was required to present a Fitness-for-Duty Certificate to the Director of Human Resources prior to

---

[1] Plaintiff requested leave on April 16 and the surgery was originally scheduled for April 28. Plaintiff's surgery actually occurred on May 5 because his doctor delayed the surgery by one week.

[2] In his response to Defendant's MSJ, Plaintiff completely distorts the meaning of the May 1 deadline Hunt County gave the Plaintiff for returning this Certification of Serious Health Condition. Dkt. 36, p. 23. Hunt County requires this Certification *before* an absence in order to ascertain whether it should properly permit the FMLA leave, and it makes this clear on the Application for Leave. Dkt. 34-2, p.40. However, by federal law, the employer must give the employee a minimum of 15 days to obtain this Certification. 29 C.F.R.§ 825.305(b). Since Plaintiff requested leave on April 16, federal law required that the return date be no earlier than May 1, even though May 1 was after

being restored to employment, but he never did so. Dkt. 34-2, p. 25 [R. Law Depo., p. 69]; *Id.* at 68 [Aff. of S. Orange ¶ 8]. Nonetheless, instead of preventing Plaintiff from working, the Defendants permitted him to return to work, while repeatedly requesting the required certificate. Dkt. 34-2, pp. 25-26 [R. Law Depo., p. 69-70].

Plaintiff contends that he was still on FMLA leave at the time he was fired because the medical release provided to Hunt County two days before his dismissal stated that he needed a follow-up doctor's appointment on August 9. Dkt. 36, p.23; Dkt. 37-2, p. 7. Plaintiff makes this argument despite the fact that he did not request intermittent leave and the response he was given from Hunt County to his application for leave did not grant intermittent leave. Dkt. 34-2, pp. 40-48 [Applic. for FMLA Leave dated 4/16/2010].

Here, Plaintiff is making the misguided claim that Hunt County was not legally permitted to fire the Plaintiff until a doctor had certified that the Plaintiff no longer required periodic follow-up visits for his Peripheral Arterial Disease ("PAD"). FMLA was hardly intended to constrain employers so severely; surely there is no patient who has suffered from a serious health condition who does *not* require periodic check ups related to his condition. Plaintiff is thus suggesting that once an employee has taken FMLA leave, an employer is prohibited from terminating the employee for so long as the employee requires periodic medical appointments related to the condition for which he requested leave. This goes too far.

Plaintiff cites two cases from outside the Fifth Circuit to support this argument, but neither deal with follow-up appointments pertaining to leave already taken. In *Erdman,* the Plaintiff was fired after she had applied for leave, but before the leave began. *Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 504 (3d Cir. 2009). Similarly, in *Burnett,* an employee was

---

the originally scheduled surgery date of April 28. When Plaintiff's physician delayed the surgery, the May 1 Certification deadline did not change at all.

**Defendant Hunt County's Reply**

fired after an adverse diagnosis and before he had even had a chance to apply for FMLA leave. *Burnett v. LFW Inc.,* 472 F.471, 476 (7th Cir. 2006).

Plaintiff also argues that he was still on FMLA leave at the time of his dismissal because the Employee Warning Record provided to Plaintiff at the time of his dismissal stated that Law was still on "Lite Duty." Dkt. 36 at p. 24 [Pltf's Response]. Here, Plaintiff conflates FMLA leave and light duty, treating them as if they were the same thing. Later in his brief, Plaintiff makes a distinction between light duty and FMLA leave when he admits that the doctor's release dated June 2, 2010 removed him from light duty, but still argues that he was on FMLA leave because the same release required a follow-up appointment. *Id.* at p. 27. For purposes of ascertaining whether Plaintiff was denied FMLA rights to which he was entitled, it is irrelevant whether or not he was on light duty on the day he was fired. The relevant question is whether the Defendants interfered with Plaintiff's requests to take leave from work for a serious health condition as protected by the FMLA. There is no evidence to show this interference, and ample evidence to show that the Defendant leniently extended to the Plaintiff every right to which he was entitled, and more.

**B.   Hunt County is entitled to summary judgment on Plaintiff's FMLA Discrimination and Retaliation Claim.**

**1.   Plaintiff has not established a prima facie case of discrimination or retaliation under the FMLA because Plaintiff would have been fired even if he had not taken FMLA leave.**

Plaintiff has admitted that he was not treated less favorably than other employees. Dkt. 36, p. 26 [Pltf's Response]. However, Plaintiff disputes Judge Berger's claim that Plaintiff's FMLA leave was irrelevant to her decision to fire him. *Id.* Plaintiff's only "evidence" to support the claim that he was discharged because he took FMLA leave is that the firing occurred approximately one month after his surgery. However, the Fifth Circuit has recently reaffirmed

that "timing alone will not always be enough for a prima facie case" of FMLA discrimination and retaliation. *Amsel v. Texas Water Development Board,* No. 11-50255, 2012 U.S. App. LEXIS 5681, at *17 (5th Cir, March 19, 2012) (quoting *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 n. 3 (5th Cir. 1997)). In *Ansel,* the court affirmed a summary judgment in favor of an employer who dismissed the plaintiff two months after plaintiff's FMLA leave had ended and less than one month after plaintiff had requested additional leave. In holding that the plaintiff failed to establish a prima facie case for FMLA retaliation, the court concluded that the plaintiff's "ultimate contention, then, comes down to the speculative argument that [the employer] dismissed [the plaintiff] because it knew he was disabled and would likely continue to request FMLA leave. Such speculation does not support a causal inference." *Id.* at *18-19. As in *Ansel,* if the court were to adopt the Plaintiff's argument, it would in essence require an employer to delay firing employees after they have taken FMLA leave, even when the FMLA leave had nothing to do the reasons the employer wanted to terminate the employment. In this particular case, Judge Berger had given Plaintiff six months to learn the job and had determined that he was not suitable for the position. Six months was a reasonable amount of time to expect a court clerk to learn his job; Judge Berger should not be forced to delay the decision further simply because the employee took a few days off for surgery.

Plaintiff also claims that Defendant is making a "mixed-motive" argument. Dkt. 36 at p.28 [Pltf's Response]. This is simply not the case. Hunt County is arguing that it fired Plaintiff because he did not perform his job well. Plaintiff's requests for FMLA leave were not a factor in Defendant's decision to fire the Plaintiff.

    **2.**    **Judge Berger had a legitimate, non-discriminatory reason for her actions.**

If the court were to find that Plaintiff established a prima facie case of discrimination and retaliation under the FMLA, the burden shifts to the Defendant to establish a legitimate, non-

discriminatory or non retaliatory reason for his termination. *Bocalbos v. Nat'l. Western Life Ins. Co.,* 162 F.3d 379, 384 (5th Cir. 1998). Plaintiff has conceded that the Defendant has satisfied its burden of proof at this stage. Dkt. 36 at p. 29 [Pltf's Response]. Thus, for purposes of this motion for summary judgment, there is no question as to whether the Defendant had a valid reason to terminate Plaintiff's employment.

> **3.   Plaintiff has failed to establish that Judge Berger's legitimate, non-discriminatory reasons for hiring Plaintiff are a pretext for discrimination.**
>
> **a.   Plaintiff has admitted that he did not perform his job well; he was fired because of his poor job performance.**

Plaintiff was fired because he did not perform his job well, and the Plaintiff himself has admitted as such. Plaintiff admits that on numerous occasions, he was told that his job performance was not meeting the expectations of his supervisors. For example, he admits that his immediate supervisor, Judy Travis, would say to him from time to time, "You need to pick up the pace," or "You're making too many mistakes." Dkt. 34-2, p. 19 [R. Law Depo., p. 57]. He complained that he was never properly trained to perform these tasks, and that he should never have been asked to train a new employee because he had never been properly trained himself. Dkt. 34-2, pp. 9, 21 [R. Law Depo., pp. 21, 59]. Furthermore, Plaintiff even admitted that he never really learned how to perform these tasks properly before his termination. Dkt. 34-2, p. 9 [R. Law Depo., p. 21]. Plaintiff also admits that there was at least one incident where his supervisor spoke to him about an outburst of anger that arose in connection with a comment he had made to a prosecutor who had come to Judge Berger's court on business. Dkt. 34-2, p. 16-17 [R. Law Depo., pp. 43-45]. Finally, Plaintiff admits having received a written document entitled "Employee Warning Record" on the date of his termination. Dkt. 36, p. 16 [Pltf's Response]; Dkt. 37-5, p. 28 [Employee Warning Record dated June 4, 2010]. These written remarks stated that the Plaintiff "spends too much time visiting," "does not answer the phone," is

"a little sharp with the public sometimes," and "does not step up to the plate on other duties to office." *Id.* These same written remarks also reference three other times that he had been spoken to about his job performance. *Id.* [3]

Plaintiff has offered no evidence that contradicts his deposition testimony that he did not perform his job to the satisfaction of Judge Berger or his immediate supervisor. Judge Berger was dissatisfied with Plaintiff's job performance, had warned him repeatedly (both before and after his FMLA leave in May, 2010) and fired him because he was not up to the standard she expected in her court.

Plaintiff proffers two weak arguments to counter Defendant's evidence of Plaintiff's poor work performance. The first is that Plaintiff's immediate supervisor, Judy Travis, would not have asked Plaintiff to train a new part time employee if she did not think he could do his job. Dkt. 36 at p. 32. The evidence shows that Ms. Travis asked Plaintiff to show Ms. Martel "how to put the tickets in the computer." Dkt. 34-2, p. 21 [R. Law Depo., p. 59]; The fact that he was asked to show a new part-time employee how to enter data into the computer does not rebut the evidence showing that Plaintiff's supervisors were dissatisfied with his job performance.

Plaintiff also asserts that Judy Travis had previously testified before the Texas Workforce Commission that Plaintiff's errors were "small," thus implying that Ms. Travis had testified that Plaintiff's work performance was not so bad. Dkt. 36 at p. 33 [Pltf's Response]. Plaintiff's brief completely mischaracterizes Ms. Travis' testimony from that hearing. In the hearing, the hearing officer asked her, "Mrs. Travis, was there some final incident that triggered the decision to

---

[3] In his declaration, Plaintiff denied ever seeing the two oral warning records from March 5 and April 23 that were produced by Defendant (even though one of them states that Plaintiff was offered a chance to sign it and refused to do so). Dkt. 37-9, p. 3, ¶¶13-14; Dkt. 36, p. 28; Dkt. 37-5, pp. 23-24. Whether Plaintiff received *written* confirmation of *oral* warnings, however, is irrelevant to the question of whether he received *oral* warnings. Moreover, the Employee Warning Records he admits to receiving on the day he was terminated verifies these conversations. Dkt. 37-5, p. 28. Self-serving statements, without more, will not defeat a motion for summary

discharge the Claimant?" Ms. Travis responded that there was no one incident that triggered his dismissal and that, instead, it was a series of repeated mistakes over the entire six month period of his employment that culminated in the decision to terminate him. Specifically, she said,

> "There was [sic] *quite a few small errors,* and we worked with him on it, and it just wasn't getting any better close to the end of, you know, the six-month period."

Dkt. 37-2 at p. 5 [Pltf's Appendix]. When read in its full context, the word "small" changes completely. Plaintiff was not learning his job, so he was fired.

### b. Plaintiff's claims about Defendants' "lack of candor" are completely irrelevant to the issue of whether he was fired for his poor job performance.

Plaintiff offers several examples of Defendants' "lack of candor" in dealings with Plaintiff. Even if they were true (which Defendant denies), they are not relevant to the fundamental issue, which is whether Defendant's reasons for terminating Plaintiff's employment were merely a pretext for discrimination. For example, Plaintiff disputes who made the decision to fire Plaintiff, but the question of *who* played a role in the firing is not germane to *why* the Plaintiff was fired. The parties disagree about the Plaintiff's return of a medical release following his surgery, but this, too does not rebut Defendant's evidence of his poor work performance. Further, Plaintiff's claims that one colleague called him a "dumb messcan," and another called him an "old shithead" may be proof that he worked with some impolite people, but they are not proof that he was fired because he took FMLA leave.

### c. Defendant has repeatedly demonstrated that it bore no animus toward his medical condition or his FMLA leave.

The record makes it clear that Hunt County bore no discriminatory animus towards the Plaintiff. Indeed, Judge Berger hired Plaintiff for her court, knowing that he had been on FMLA

---

judgment, particularly one supported by plentiful contrary evidence. *Shaneika Smith v. Southwestern Bell Telephone*

leave for his PAD and knowing that he would be on light duty when he began his work for her. Dkt. 37-5, p. 12 [R. Law Depo., p. 40]. Plaintiff claims that the "same actor inference," which this court has considered relevant on several occasions, is only applicable in cases based on one's status (e.g., age or race) not to one's protected "activity." Plaintiff cites no cases that make such a distinction, and there would be no logic to it. In this case, Judge Berger was fully aware of Plaintiff's medical condition at the time she offered him a job. She was not concerned by his medical limitations because the job she needed him to perform could be easily accomplished within the parameters of his medical limitations. The same actor inference is thus applicable here. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) ("From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job.") (internal quotations omitted); *Schutze v. Fin. Computer, Software, LP*, NO. 3:04-CV-0276-H ECF, 2006 U.S. Dist. LEXIS 73734, 13-14 (N.D. Tex. Sept. 29, 2006) (in an age discrimination case, holding that the same actor inference "serves to negate a plaintiff's allegation that non-discriminatory reason given for termination are pretextual."); *Penalver v. Res. Corp. of Am.,* No. 3:10-CV-0280-D, 2011 U.S. Dist. LEXIS 53330, 13-14 (N.D. Tex. May 18, 2011) (in a summary judgment action, holding that plaintiff failed to offer evidence of sufficiently egregious facts to overcome the same actor inference).

C.    **Hunt County is entitled to summary judgment on Plaintiff's ADA Claims.**

    1.    **Plaintiff has failed to establish a prima facie case for discrimination under the ADA.**

        a.    **Plaintiff does not suffer from a disability under the ADA.**

Plaintiff's PAD was not a disability that substantially limited one or more of his major life activities. In 2009, during Plaintiff's employment with the Hunt County jail, Plaintiff was

---

*Company, No. 11-10506, 2012* U.S. App. LEXIS 282 at **7 (5th Cir. Jan. 5, 2012).
**Defendant Hunt County's Reply**
407948/26924/eed/jaw                                                                                                   Page 12 of 15

diagnosed with PAD and went on light duty, which prevented him from prolonged walking without ability to stop to rest due to a circulation problem with his left leg. Dkt 34-2 at 68 [Aff. of Sandy Orange ¶5]. All parties agree that when Plaintiff began his work in Judge Berger's court in December, 2009 that he was still on light duty for PAD, and it was understood that he could not walk for long distances. Dkt. 24, p. 20 [1st Amend. Compl. ¶20]. His job in Judge Berger's court was one that required office work and work with the court's computer system, activities that were well within the parameters of his light duty. *See* Dkt. 34-2 at 67 [R. Law Depo., p. 20].

The medical release tendered by the Plaintiff on June 2, 2010 shows that his doctor discharged Plaintiff from care and authorized Plaintiff to return to regular duty. Dkt. 34-2 at p. 27 [R. Law Depo., p. 71]; Dkt. 34-2 at p. 59 [Medical Release dated 6/02/2010]. Plaintiff's restrictions were minor and of limited duration. As shown in detail in Hunt County's Motion for Summary Judgment, Plaintiff's health restrictions were easily manageable in the context of his office job, and Judge Berger hired Plaintiff with full knowledge of his medical condition. Plaintiff's PAD does not rise to the level of a disability, as that term is defined under the ADA.

      **b.**      **Plaintiff was not qualified for the job.**

Judge Berger gave Plaintiff six months to learn his job, but terminated his employment when it became clear to her that he was not improving and was not suited for the job she needed him to perform. Plaintiff has offered no evidence to show that he was qualified for the position; to the contrary, he has admitted that he failed to learn his job and perform it effectively. *See discussion,* Part II.B.3, *supra.* Essentially, Plaintiff is arguing that his medical condition prevented an employer from firing him, regardless of his job performance. The ADA was intended to protect the jobs of competent employees dealing with irrational prejudice; it was not intended to provide permanent job security for those not qualified to perform their jobs.

**2.    There were legitimate, non-discriminatory reasons for Plaintiff's discharge.**

Plaintiff has conceded that the Defendant has satisfied its burden of proof at this stage by giving ample evidence that there were legitimate, non-discriminatory reasons for Plaintiff's discharge. Dkt. 36 at p. 54 [Pltf's Response]. Thus, for purposes of this motion for summary judgment, there is no question as to whether the Defendant had a valid reason to terminate Plaintiff's employment.

**3.    Plaintiff cannot establish that Defendant's reasons for discharging Plaintiff are a pretext for discrimination.**

Since Hunt County had legitimate, non-discriminatory reasons for its actions, Plaintiff must establish by a preponderance of the evidence that these reasons are merely a pretext for discrimination. *Bennett v. Calabrian Chems. Corp.*, 324 F. Supp. 2d 815, 825 (E.D. Tex. 2004), *aff'd.* 2005 U.S. App. LEXIS 4565 (5th Cir. Tex. 2005). For the same reasons stated in response to Plaintiff's FMLA discrimination claim (Part II.B.3, *supra*), Plaintiff has no evidence to rebut the legitimate, non-discriminatory reasons for his dismissal.

## V.
### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Hunt County prays that its motion for summary judgment be granted, that all of Plaintiff's claims alleged against it be dismissed with prejudice, and for such other and further relief, both general or special, at law or in equity, to which it is justly entitled.

Respectfully submitted,

  /s/ Thomas P. Brandt
**THOMAS P. BRANDT**
  State Bar No. 02883500
  tbrandt@fhmbk.com
**JOSHUA A. SKINNER**
  State Bar No. 24041927

jskinner@fhmbk.com

**FANNING HARPER MARTINSON
BRANDT & KUTCHIN, P.C.**
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**ATTORNEYS FOR DEFENDANT HUNT COUNTY**

## CERTIFICATE OF SERVICE

    This is to certify that on 12th day of April, 2012, I electronically filed the foregoing document with the clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the Court, and that it reported that it was delivered to all attorneys of record.

      /s/ Thomas P. Brandt
**THOMAS P. BRANDT**